**E. M. TRUCKS, INC., a Minnesota Corporation, Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION PLAN, Defendant.**

**No. 5–81–Civ 27.**

United States District Court, D. Minnesota, Fifth Division.

July 6, 1981.

Van Evera, Koskinen, Clure, Andrew & Signorelli by Kenneth D. Butler, Duluth, Minn., for plaintiff.

Robins, Zelle, Larson & Kaplan by Ernest I. Reveal, Saint Paul, Minn., for defendant.

### MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon the motions of both parties for summary judgment. Memoranda were submitted on behalf of the parties, and oral argument was heard on June 4, 1981.

### BACKGROUND

Between 1974 and early 1977, employees of plaintiff working in plaintiff's Truck Parts Department were participants in the defendant Plan. On or about April 14, 1977, a new collective bargaining agreement between plaintiff and the Union for these employees went into effect, thereby terminating the employees' participation in the Plan. Plaintiff mistakenly continued to make contributions to the defendant Plan on behalf of its Truck Parts Department employees from May 27, 1977 through March 29, 1980, in the total amount of $16,960.00.

In May of 1980, plaintiff demanded the return of the $16,960.00 mistakenly paid to defendant. Defendant's Trustees automatically credited plaintiff with $1008.00 for the contributions paid from January 27 through March 29, 1980, but determined that the remaining contributions were made as a result of a mistake of law and therefore could not be returned under 29 U.S.C. § 1103(c) and the Trust Agreement governing defendant.

On September 26, 1980, Public Law 96–364 was enacted. It amended 29 U.S.C. § 1103(c)(2) to permit the return to employers of contributions made by mistake of fact or of law within six months after the plan administrator determines the contributions were mistakenly made, effective retroactively from 1975. As a result of this amendment, the Trustees of defendant amended the applicable Trust Agreement by adopting a resolution which—though refusing to reverse prior denials of refund requests—permitted a refund for mistaken contributions if application therefor is received within one year of the mistaken payment. The resolution was deemed to be effective "relative to the Trustees' decision on and after September 26, 1980, upon application for employer contribution refunds."

On December 18, 1980, defendant received plaintiff's renewed request for a refund. Defendant's Trustees agreed to refund $816.00 for the contributions made by plaintiff on or after December 18, 1979 and not previously credited to plaintiff. However, the Trustees refused to refund any other contributions.

Plaintiff commenced the above-entitled action on March 4, 1981 to recover the remaining contributions, in the amount of $15,136.00, together with interest and reasonable attorney's fees.

## DISCUSSION

■ Defendant asserts that plaintiff's Complaint should be dismissed because of plaintiff's failure to "properly" allege subject matter jurisdiction. The court disagrees. Although jurisdiction does not exist under 29 U.S.C. § 1451, as alleged in the Complaint, defendant concedes that federal question jurisdiction exists under 28 U.S.C. § 1331. Consequently, plaintiffs should and will be permitted to amend their Complaint to allege jurisdiction pursuant to 28 U.S.C. § 1331.

Defendant's more substantial argument for dismissal is that 29 U.S.C. § 1103(c)(2)(A) permits, but does not require, trust funds to return mistakenly paid contributions. Plaintiff does not dispute that the amended Trust Agreement presently governing defendant bars the return of contributions plaintiff paid more than one year prior to defendant's receipt on December 18, 1980 of plaintiff's renewed request for refund.[1] However, plaintiff argues that regardless of the terms of the Trust Agreement, 29 U.S.C. § 1103(c)(2)(A) requires the return of all payments made because of a mistake of law or of fact on or after January 1, 1975 if request therefor is made within six months of the wrongful payment or by March 26, 1981, whichever is later.

29 U.S.C. § 1103(c)(2)(A), in pertinent part, states:

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law, ... paragraph 1 shall not prohibit the return of such contribution ... to the employer

within 6 months after the plan administrator determines that the contribution was made by such a mistake.[2]

In amending 29 U.S.C. § 1103(c)(2)(A) in 1980, Congress provided that the amended section would be effective retroactively to January 1, 1975 and that determinations of mistake made prior to the enactment of the amendment (September 26, 1980) would be treated as made on the date of enactment for purposes of the six-month limitation period. Public Law 96–364, Section 410(c).

The court finds instructive the recent opinion of the United States Court of Appeals for the Fourth Circuit in *Teamsters Local 639—Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865 (1981). There, the Court held that the predecessor to the present 29 U.S.C. § 1103(c)(2)(A) did not make recovery of mistaken payments automatic, but made recovery subject to "the traditional principles of equity which [are] applicable to such cases." Slip Op., at 7. In addition, the Court clearly indicated that "under the appropriate equitable principles" an employer could be "entitled to restitution." Slip Op., at 8.

■ This court agrees with the Fourth Circuit Court of Appeals that 29 U.S.C. § 1103(c)(2)(A) does not make the refund of mistaken payments automatic. In addition, the court holds that such payments must be refunded if equity so requires.

This holding is supported by the purposes and overall structure of ERISA. 29 U.S.C. § 1001(a) states the Congressional finding "that it is ... desirable ... that minimum standards be provided assuring the equitable character of ... plans ...." Moreover, if—as defendant contends— § 1103(c)(2)(A) were totally "permissive," trustees of funds usually would have no incentive to voluntarily return mistakenly paid contributions, thereby effec-

---

1. Plaintiff contends that its payments resulted from a mistake of fact, and that it therefore was and is entitled to a return of payments made within one year of its initial request for refund on May 27, 1980. The court need not address this contention in light of its disposition of the matter in plaintiff's favor.

2. 29 U.S.C. § 1103(c)(1) provides that, except as provided in § 1103(c)(2)(3) and (4), plan assets shall never inure to the employer's benefit and shall be held for the exclusive benefit of plan participants and their beneficiaries.

tively rendering 29 U.S.C. § 1103(c)(2)(A) a nullity.[3]

The legislative history gives little guidance on this issue. "Permissive" language is used frequently, see [1974] U.S.Code Cong. & Ad.News 4639, 5038, 5083 (the statute "allows an employer's contribution to be returned to him in certain limited situations"); 126 Cong.Rec. S. 10130 ("a contribution made because of a mistake of fact is permitted to be returned;" "a contribution made due to a mistake of fact or mistake of law should be eligible for return to the employer if specified conditions are met;" "[u]nder the Bill, in the case of a contribution to a multiemployer plan which was made because of a mistake of law or fact, the contribution may be returned without penalty within six months after the date the plan administrator determines that the contribution resulted from a mistake of law or fact"). This language demonstrates that a fund should not be required in all circumstances to return mistakenly made contributions for which timely application is made. However, it does not address the question of whether return is required when equity so demands. In light of the legislative silence, of 29 U.S.C. § 1001(a), and of the virtual nullification of § 1103(c)(2)(A) that would result from defendant's interpretation of the provision, the court concludes that § 1103(c)(2)(A) in some circumstances requires that funds return mistakenly made contributions to employers.

 As both parties agree, the question of whether equity would require defendant to return the payments mistakenly made by plaintiff is one of fact that cannot be resolved on the basis of the present record. Consequently, both parties' motions for summary judgment will be denied.

Upon the foregoing,

IT IS ORDERED That plaintiff be and it hereby is granted leave to file an Amended Complaint.

IT IS FURTHER ORDERED That the motion of plaintiff for summary judgment be and it hereby is denied.

IT IS FINALLY ORDERED That the motion of defendant for summary judgment be and it hereby is denied.

---

**3.** Defendant argues that § 1103(c)(2)(A) permits a fund's trustees to decide whether to adopt a rule requiring the return of all mistakenly made payments for which timely application is made. There is no support in the legislative history for this interpretation. Moreover, this interpretation also would render § 1103(c)(2)(A) a nullity, for trustees would have little if any incentive to adopt such a rule if not required to do so.