CROWN CORK AND SEAL
COMPANY, INC.

v.

TEAMSTERS PENSION FUND OF
PHILADELPHIA AND VICINITY and
Teamsters Health and Welfare Fund of
Philadelphia and Vicinity.

Civ. A. No. 80–4230.

United States District Court,
E.D. Pennsylvania.

Oct. 13, 1982.

Jeffrey S. Orchinik, Sagot & Jennings, Philadelphia, Pa., for defendants.

Steven G. Pollock, Stack & Gallagher, Philadelphia, Pa., for plaintiff.

## MEMORANDUM

GILES, District Judge.

Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Pension Fund") and the Teamsters Health and Welfare Fund of Philadelphia and Vicinity ("Welfare Fund") move to dismiss plaintiff's second amended complaint for failure to state a claim and for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b). For the reasons which follow, defendants' motion is granted.

This is an action instituted by Crown Cork and Seal Company, Inc. ("Crown"), an employer contributor, for a declaratory judgment pursuant to 28 U.S.C. § 2201 (1976) to determine its rights to recover excess contributions which it mistakenly made to the defendant Funds. The parties have stipulated to the following facts.

As an employer, Crown is obligated to make monthly contributions to the Pension Fund and the Welfare Funds. The Funds are multiemployer plans and employer benefit plans as defined in section 3(3) and (37) of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1002(3) and (37) (1976 and Supp. IV, 1980). They are maintained for the sole purpose of providing retirement and welfare benefits for participants, eligible employees and dependents. The employees are members of collective bargaining units covered by collective bargaining agreements between labor organizations affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and various participating employers. Crown alleges that as a result of its misunderstanding of the terms of these collective bargaining agreements it forwarded to both Funds contributions which exceeded the contractually prescribed amounts.

On August 20, 1979, as the result of a random field audit conducted by the Funds for the period January 1, 1978 through December 31, 1978, Crown was notified that it had made excess contributions in the amount of $4,418.77 to the Pension Fund and $4,422.85 to the Welfare Fund. On September 18, 1979, Crown applied for the return of these excess contributions and made a subsequent written demand on February 20, 1980. On March 21, 1980, the Funds advised that it questioned the propriety of refunding any of the mistakenly made contributions. Crown then informed the Funds that the total amount of its excess contributions to both Funds for the years 1970–1978 approximated $80,000.00. None of these disputed funds have been returned.

Crown filed suit seeking a declaration that the contributions were overpaid due to a mistake of fact or law within the meaning of the Multi-Employer Pension Plan Amendments Act of 1980, ("MEPPA") 29 U.S.C. § 1103(c)(2)(A)(ii) (Supp. IV 1980), and that the statute does not prohibit the return of excess pension contributions. Five bases for subject matter jurisdiction are asserted: (1) 28 U.S.C. § 1331 (1976)—alleging "arising under" jurisdiction to interpret the rights of the parties under section 403(c)(2)(A) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii) by MEPPA as amended; (2) section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) (1976); (3) section 4301 of MEPPA, 29 U.S.C. § 1451 (Supp. IV 1980); (4) 28 U.S.C. § 1337(a) (1976)—alleging a case or controversy requiring the interpretation and application of ERISA, a statute affecting and/or regulating interstate commerce; and (5) section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976)—alleging a dispute requiring the interpretation of collective bargaining agreements. In addition, plaintiff asserts a pendent state claim with respect to its right to restitution of mistakenly made contributions received by the Funds prior to January 1, 1975, the effective date of ERISA. Defendants move to dismiss, basically asserting that none of the purported bases of jurisdiction supports federal subject-matter jurisdiction and that absent jurisdiction over the federal claims the court should not hear the pendent state claims.

To understand fully the parties' positions, some background on ERISA's statutory scheme is necessary. ERISA was enacted in 1975 to provide for comprehensive regu-

lation of employee pension plans. A review of its preamble, 29 U.S.C. § 1001 (1976), makes it apparent that in enacting ERISA Congress' overriding concern was that employees with long years of employment and contributions are assured of receiving their pension benefits.[1] "Because ERISA is employee-oriented, Congress specifically provided that the assets of a plan 'shall never inure to the benefit of any employer.' 29 U.S.C. § 1103(c)(1)." *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074, 1077 (3d Cir. 1978).

As a very limited exception to this general rule, ERISA provided that the requirement that a plan's assets shall not inure to an employer's benefit would not prohibit the return to the employer of contributions made by a mistake of fact, within one year after the payment of the contribution. 29 U.S.C. § 1103(c)(2)(A) (1976).

In response to problems of growth and stability which Congress perceived to be peculiar to multi-employer pension plans, ERISA was amended by MEPPA. One of Congress' concerns in enacting MEPPA was the refund of mistaken contributions which it addressed in 29 U.S.C. § 1103(c)(2)(A)(ii) (Supp. IV 1980). The scant legislative history of this provision indicates that ERISA's "mistake of fact" exception was believed to be too narrow in the case of multi-employer pension plans, and was expanded to provide that a contribution due to a mistake of fact *or* mistake of law should be eligible for return to the employer if specified conditions are met. 96th Cong., 2d

Sess., 126 Cong.Rec.S. 10130 (daily ed. July 29, 1980).[2] Thus, section 403(c)(2)(A) was amended to read:

> In the case of a contribution . . . made by an employer to a multi-employer plan by a mistake of fact or law . . . paragraph 1 *shall not prohibit* the return of such contributions . . . to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake. (emphasis added).

29 U.S.C. § 1103(c)(2)(A)(ii) (Supp. IV 1980).

The MEPPA amendments left the basic jurisdictional provisions of ERISA untouched. Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e), provides "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1) (1976). Section 502(a) provides that a civil action may be brought by a participant, beneficiary, fiduciary, or the Secretary of Labor. Even though this express statutory language does not include employers within the scope of persons empowered to bring actions under ERISA, plaintiffs assert that this court has jurisdiction to hear their claim.

█ In sorting out the parties' arguments on jurisdiction, I note that the concepts of "jurisdiction" and "cause of action" are intertwined. Whether subject matter jurisdiction exists in this case is a separate inquiry from whether a cause of action may properly be asserted. To avoid any confusion, I shall address these issues separately.

---

1. This section, 29 U.S.C. § 1001 (1976), sets forth congressional findings and policy declarations which basically assert that despite the rapid growth in employment benefit plans, employees were losing employee retirement benefits due to lack of vesting, early termination, and the general instability of such plans. 29 U.S.C. § 1001(a). Further, Congress determined that ERISA's policy is to protect the interests of participants and their beneficiaries in private pension plans. 29 U.S.C. § 1001(c). *See also Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074, 1076–77 (3d Cir. 1978).

2. Section 410(c) of MEPPA provides that in the case of contributions received by a plan maintained by more than one employer *before* the date of MEPPA's enactment, September 26, 1980, any determination made before that date by the plan administrator that the contributions were made by mistake of fact or law shall be deemed to have been made *on* September 26, 1980. *See* Note accompanying 26 U.S.C. § 401 (1976): Effective date of 1980 amendments. In this case, the Plan administrators determined that the contributions were mistakenly made on August 20, 1979. Under section 410(c), however, the determination is deemed to have been made on the date of MEPPA's enactment so that its provisions apply in this case.

Of plaintiff's asserted bases of jurisdiction, I find that only one is appropriate—federal question jurisdiction under 28 U.S.C. § 1331.[3]

The Third Circuit has determined that a case can be said to arise under the laws of the United States for purposes of section 1331 jurisdiction when it requires the construction of a federal statute or when a distinctive policy of a federal statute requires the application of federal legal principles for its disposition. *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974). Both factors appear to be present in this case and therefore I shall assume that federal question jurisdiction exists, at least for the lim-

ited purpose of deciding whether an employer has a cause of action for restitution under ERISA, as amended by MEPPA. *See EM Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 517 F.Supp. 1122, 1124 (D.Minn.1981) (§ 1331 jurisdiction exists to decide employer suit for mistaken contributions); *Cf. Berks Products Corp. v. Landreau*, 523 F.Supp. 304, 309 (E.D.Pa.1981) (1331 jurisdiction exists to decide whether The National Housing Act gives rise to a duty by HUD to subcontractors).[4]

■■ An examination of the statutory language shows that such a cause of action

---

**3.** In addition to section 1331 jurisdiction, plaintiff asserts jurisdiction under the following theories.

(1) *29 U.S.C. § 1132(e)(1)*—This section does not provide subject-matter jurisdiction over plaintiff's claims, since it is expressly limited to actions brought by fiduciaries, beneficiaries, participants or the Secretary of Labor. An action brought by an employer *qua* employer such as plaintiff is not included within the scope of this section. *See Wong v. Bacon*, 445 F.Supp. 1177, 1183 (N.D.Cal.1977). *Cf. U.S. Steel Corp. v. Cwlth of Pa Human Relations Commission*, 669 F.2d 124, 127–28 (3d Cir. 1982) (employer who is "fiduciary" may bring action under section 1132).

(2) *29 U.S.C. § 1451(a)(1) (Supp. IV 1980)*—This section which provides that an "employer ... who is adversely affected by the act or omission of any party under this subtitle with respect to a multi-employer plan ... may bring an action for appropriate legal or equitable relief," does not provide subject-matter jurisdiction over this action. This section is expressly limited to actions brought under the subtitle of MEPPA relating to employer withdrawal liability. *See EM Trucks, Inc. v. Central States, S.E. and S.W. Areas Pension Fund*, 517 F.Supp. 1122, 1124 (D.Minn.1981) (section 1451 does not confer jurisdiction over employer suit for excess contributions.)

(3) *Section 301 of LMRA*—Claiming that this suit involves an interpretation of the collective bargaining provisions relating to the amount of contributions, plaintiff asserts jurisdiction by virtue of section 301 of the LMRA, 29 U.S.C. § 185(a) (1976) which provides that district courts have jurisdiction over suits for violations of contracts between an employer and a labor organization. Quite simply, I do not find § 301 jurisdiction to be present, since there is no dispute as to the contents, interpretation or obligations of the parties under any of the Trust Documents or the collective bargaining agreement.

**(4)** *28 U.S.C. § 1337*—While the test for when an action "arises under any act of Congress regulating commerce" within the meaning of this section is virtually identical to the question of when a case arises under a federal law for purposes of section 1331 jurisdiction, there is an important distinction. Under section 1337, federal common law, *per se,* does not constitute an "act of Congress." Thus, to the extent that plaintiffs assert jurisdiction based on a substantive law of restitution, section 1337 may not provide a jurisdictional basis. *See, e.g., Wong v. Bacon*, 445 F.Supp. 1177, 1186 n. 12 (N.D.Cal.1977).

**4.** In support of their position that subject matter jurisdiction under § 1331 is lacking, defendants cite the Third Circuit's judgment order in *AAA Trucking Corp. v. Teamsters Pension Fund of Philadelphia, et al.*, 633 F.2d 209 (3d Cir. 1980). AAA Trucking was a pre-MEPPA decision in which the Third Circuit vacated, for lack of subject-matter jurisdiction, the district court's decision and order denying an employer the right to recover excess pension contributions due to a mistake of law. The jurisdictional issue was raised *sua sponte* by the Third Circuit. While the complaint asserted jurisdiction only under the Declaratory Judgment Act, 28 U.S.C. § 2201 and section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), the parties briefed and argued, in addition, the other jurisdictional bases asserted in this case, *i.e.,* 28 U.S.C. § 1331, § 1337, and 29 U.S.C. § 185(a). The appeals court remanded with direction to dismiss for lack of subject-matter jurisdiction with leave to amend, plead and prove subject-matter jurisdiction, citing a decision in which the plaintiff was allowed to amend its complaint to prove diversity jurisdiction. Defendants cite *AAA Trucking* as authority rejecting plaintiff's asserted bases of jurisdiction in this case. Even if it is possible to give *AAA Trucking* such a broad reading, it is distinguishable.

is not expressly granted. Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) (1976) clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons, none of which includes employers. *See Wong v. Bacon,* 445 F.Supp. at 1183. Thus, I find by the express language of this section that plaintiff is not entitled to assert a cause of action for restitution.[5] Moreover, I do not find any basis from which to infer an implied right of action for restitution by an employer. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court identified the four factors to be considered in deciding whether "a private remedy is implicit in a statute not expressly providing one . . . ." *Id.* at 78, 95 S.Ct. at 2087. The court must decide (1) whether the plaintiff is " 'one of the class for whose *especial* benefit the statute was enacted,' " *id.* at 78, 95 S.Ct. at 2087 (quoting *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis in original); (2) whether Congress indicated, either explicitly or implicitly, an intent to create such a remedy; (3) whether such a remedy is consistent with the purposes underlying the legislative scheme; and (4) whether the cause of action is one "traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* Decisions since *Cort v. Ash* make it plain that the central inquiry is congressional intent, with the first three factors being means of discerning that intent. *See, e.g., Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

In this case, there is no evidence of Congressional intent to create a cause of action for restitution in favor of employers. Employers were not the group for whose especial benefit the statutory scheme was enacted. The statute specifically enumerates other private causes of action yet conspicuously does not list employers ·within the group of persons entitled to maintain a cause of action. ERISA and the 1980 MEPPA amendments were designed specifically to provide pension benefits for long-time employees and their beneficiaries. No Congressional intent can be discerned to benefit employers as a category.

The legislative history of section 403(c)(2)(A)(ii), 29 U.S.C. § 1103(c)(2)(A)(ii) (Supp. IV 1980) does not indicate that the expansion of the circumstances under which excess contributions could be returned to employers was intended to create a right to such contributions. The language of the statute itself is entirely permissive. It states merely that fiduciaries are not prohibited from returning to an employer contributions made by mistake of fact or law. Congress apparently chose not to use the word "may," a word which might suggest, arguably, a direction to the trustees to take affirmative steps to determine and return mistakenly made contributions, or direction to the Secretary of Labor to promulgate implementing regulations. However, the use of the phrase, "are not prohibited" expresses an intent to allow, but not require the trustees to return contributions if they choose to do so, as an exception to their strict fiduciary duties to maintain the funds for the benefit of employees.

■ On its face then, the statute imposes no requirement on the trustees to return mistaken contributions. To impose such a requirement by implication would violate the underlying statutory scheme. ERISA's primary purpose is to protect the integrity

---

*AAA Trucking* arose prior to the MEPPA amendments to section 403 of ERISA and prior to the amendment of 28 U.S.C. § 1331 which eliminated the requirement of a $10,000 amount in controversy, at least in this type of case.

**5.** The Third Circuit's decision in *U.S. Steel Corp. v. Cwlth of Pa. Human Rel. Com'n,* 669 F.2d 124 (3d Cir. 1981) does not require a different result. In that case, the court narrowly held that an employer who is also a fiduciary has standing to sue under 29 U.S.C. § 1132(a)(3). 669 F.2d at 128.

of pension funds for the benefit of employees and their beneficiaries. To that end, fund fiduciaries are strictly required to discharge their duties solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104. To impose a right to restitution in favor of employers could severely undermine the funds' integrity. Mistaken contributions, once invested, may be just as essential to the funds' integrity and stability as non-mistaken contributions. The statutory language itself recognizes this by allowing and not requiring a fiduciary to disgorge the funds. ERISA surely did not intend to impose the risk of mistaken contributions on the funds, particularly since the employer is in the best position to monitor the amount of its own contributions. Thus, I find no basis under the *Cort v. Ash* analysis for implying a private right of action by an employer.[6] Since I find that plaintiff has no federal cause of action for restitution, plaintiff's claims for a declaratory judgment as to its right to restitution of funds contributed after the effective date of ERISA are dismissed for failure to state a claim. In the absence of any federal claims, I exercise my discretion under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) to dismiss plaintiff's pendent state claims for the restitution of funds contributed prior to the effective date of ERISA.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of October, 1982, it is hereby ORDERED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Under Fed.R.Civ.P. 12(b)(6) is GRANTED.

---

[6] To the extent that other courts may have recognized a cause of action for restitution by an employer, I find myself in disagreement. *See, e.g., E.M. Trucks, Inc., v. S.E. and S.W. Area Pension Funds*, 517 F.Supp. 1122 (D.Minn.1981). I emphasize that my decision in no way implicates the right of any of the parties enumerated in section 502(e)(1), 29 U.S.C. § 1132(e)(1) (1976), to institute an action. For example, a fiduciary could bring an action for a declaratory judgment as to its rights and obligations with regard to contributions mistakenly made by an employer. *See Wong v. Bacon*, 445 F.Supp. 1177, 1186–87 (N.D.Cal.1977).