George HARDY and G.M. Kelso, as Trustees of Building Service Employees Pension Trust and as Trustees of Building Service Health and Welfare Trust Fund, Plaintiffs,

v.

NATIONAL KINNEY OF CALIFORNIA, INC., d/b/a Kinney National Management, d/b/a Kinney National Maintenance Service, d/b/a Kinney National Cleaning Company, d/b/a Realty Maintenance, Inc., and d/b/a Pedus Service Group of California, Inc., Defendants.

George HARDY and G.M. Kelso, as Trustees of Building Service Employees Pension Trust and as Trustees of Building Service Health and Welfare Trust Fund, Plaintiffs,

v.

NATIONAL KINNEY OF CALIFORNIA, INC., d/b/a Kinney National Management, d/b/a Kinney Maintenance Service, d/b/a Kinney National Cleaning Company, d/b/a Realty Maintenance, Inc., Defendants.

Nos. C 80–3867 SAW, C 81–4430 SAW.

United States District Court,
N.D. California.

Oct. 3, 1983.

Phillip Miller, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiffs.

Robert M. Sprague, Schachter, Kristoff, Ross, Sprague & Curiale, San Francisco, Cal., Stroock, Stroock & Lavan, Los Angeles, Cal., for defendants.

ORDER DENYING MOTION TO ALTER OR AMEND ORDER OF JULY 5, 1983

WEIGEL, District Judge.

Plaintiffs are trustees of the Building Service Employees Pension Trust ("Pension Trust") and the Building Service Health and Welfare Trust Fund ("Health and Welfare Fund"). Plaintiffs commenced C 80–3867 SAW on October 9, 1980, and C 81–4430 WAI on November 20, 1981. On December 22, 1981, the Court related the two actions. Both of the actions seek collection of allegedly delinquent contributions supposedly due under collective bargaining agreements from defendant Realty Maintenance, Inc. to the Pension Trust and Health and Welfare Fund.

On March 14, 1983, defendant filed its answers and counterclaims to the complaint. The counterclaims seek reimbursement of amounts defendants allegedly over paid to the Pension Trust and the Health and Welfare Fund. On July 5, 1983, 565 F.Supp. 1027, the Court granted in part plaintiffs' motion to dismiss the counterclaims for failure to state a claim upon

which relief can be granted. The Court dismissed all counterclaims relating to contributions or payments to the plans on or after January 1, 1975. Defendant now seeks reconsideration of that Order.[1]

29 U.S.C. § 1103(c)(1), which became effective on January 1, 1975, states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." Defendant's counterclaims seek to recover monies already paid to the Pension Trust and the Health and Welfare Fund, i.e. "assets" of these plans, in apparent contravention of § 1103(c)(1).

Defendant contended in its opposition to the original motion to dismiss its counterclaims that 29 U.S.C. § 1103(c)(2)(A)(ii) creates an exception to § 1103(c)(1) applicable here. Section 1103(c)(2)(A)(ii) provides that section 1103(c)(1) "shall not prohibit" the return of a contribution or payment made under a mistake of law or fact "within 6 months after the plan administrator determines that the contribution was made by such a mistake." One ground of the Order of July 5, 1983, was that section 1103(c)(2)(A)(ii) created no exception to an employer's inability to reach trust assets absent a determination by the trust that there had been a mistaken contribution.[2] The Court has again considered this decision and is not persuaded to change it.

*Crown Cork & Seal v. Teamsters Pension Fund, Etc.,* 549 F.Supp. 307 (E.D.Penn.1982) held that section 1103(c)(2)(A)(ii) permits trusts to make a finding of mistake and to reimburse employers within six months of the determination but does not require a trust to make such a determination. *Id.* at 311–12. This conclusion followed from careful analysis of the statutory scheme. *Id.* This Court, too, is persuaded that the permissive language of the statute, the paramount importance the statutory scheme places on protecting trust assets, and an employer's ability to monitor its own contributions, dictate such construction of the statute.[3]

The Supreme Court's recent decision in *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* —— U.S. ——, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) lends further support to this conclusion. A reading of section 1103(c)(2)(A)(ii) requiring a determination by the administrator upon an employer's demand would logically imply that the section creates a cause of action for an employer making such a demand. However, in *Franchise Tax Board,* the Supreme Court plainly indicated that 29 U.S.C. § 1132 exhaustively enumerated those parties empowered to bring civil actions under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq.* —— U.S. at ——, 103 S.Ct. at 2855. Section 1132 does not provide that an employer may bring action under ERISA. Defendant's contention that the decision in *Franchise Tax Board* did not preclude the State of California from maintaining a *state law* action against the trusts even though it did not fall within the enumerated group is correct but irrelevant to the question at hand.[4] Absent any applicable exception under *federal law* to section 1103(c)(1)'s prohi-

---

1. Defendant describes its present motion as a motion to alter or amend judgment under Fed. R.Civ.P. 59(e). The predicate to such a motion is entry of judgment. *Stephenson v. Calpine conifers II,* 652 F.2d 808, 812 (9th Cir.1981). Defendant's motion is better viewed as a motion for reconsideration and modification of the Order dismissing defendant's counterclaims in part and will be so considered.

2. This Court suggested that, in any event, defendant failed to plead that it had made a timely demand for refund of the alleged overpayments. This alternate ground of decision need not be considered again to dispose of the motion now before the Court.

3. *Crown Cork* was followed recently in *Wall Plastering Co. Inc., v. Trowell Trades Employees Health and Welfare Trust Fund of Dade County, et al.,* No. 82–2756–Civ–JE, (S.D.Fla. Apr. 18, 1983), Pension Plan Guide, (CCH) ¶ 23,629N (1983).

4. The Supreme Court did not decide whether the federal preemption defense was good against the state law causes of action.

bition of employer claims, defendant's counterclaims must fail.[5]

Accordingly,

IT IS HEREBY ORDERED that defendant's motion to modify this Court's Order of July 5, 1983 is denied.

---

5. This Order does not preclude defendant raising overpayment as a defense. The availability of an overpayment defense on the premises is a question distinct from that of an employer's ability to resort to plan assets for reimbursement.