In re Fergus A. MALONE, Jr., James P. Malone, Sr., William E. Malone, Co-Partners Trading as Malone Realty Company, Debtors.

Fergus A. MALONE, Jr., James A. Malone, Sr., William E. Malone, Co-Partners Trading as Malone Realty Company, Plaintiffs,

v.

TEAMSTERS HEALTH AND WELFARE AND PENSION TRUST FUNDS OF PHILADELPHIA AND VICINITY, Defendants.

Bankruptcy No. 82–04582G.
Adv. No. 83–0985G.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 14, 1984.

Jack M. Bernard, Philadelphia, Pa., for plaintiff/debtors, Fergus A. Malone, Jr., James P. Malone, Sr., William E. Malone, co-partners trading as Malone Realty Company.

Stephen F. Ritner, Sagot & Jennings, Philadelphia, Pa., for defendant, Teamsters

Health and Welfare and Pension Trust Funds of Philadelphia and Vicinity.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue in the dispute at bench is whether the debtors have a right to set off their current indebtedness under the Employee Retirement Income Security Act ("ERISA") against previous excess payments made by them. For the reasons stated below we hold that the debtors have no right of setoff.

The facts of this case are as follows:[1] The debtors filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on September 27, 1982. The three debtors,—Fergus A. Malone, Jr., James A. Malone, Sr., and William E. Malone ("the Malones"),—are partners and are also officers or principals in Malone Transportation, Inc. ("Malone Transportation") which has also filed for reorganization. Under a collective bargaining agreement signed by Malone Transportation and the multiemployer group plan known as the Teamsters Health and Welfare and Pension Trust Fund of Philadelphia and Vicinity ("the Fund") Malone Transportation agreed to remit contributions to the Fund for each hour worked by each covered employee. From 1970 through 1981 Malone, Inc., erroneously remitted contributions totalling $27,454.10 on behalf of the Malones, although these individuals were not covered employees. For contributions which it failed to remit between 1980 and 1982, Malone Transportation is liable to the Fund in the amount of $30,500.59. The parties have agreed that Pennsylvania law renders the Malones liable as guarantors on the debt of Malone Transportation to the Fund. The Fund filed proofs of claim for $30,-500.59 against the debtors and Malone Transportation. The debtors commenced the action before us to set off the $30,-500.59 indebtedness to the Fund against the $27,454.10 overpayment.

In 1974 Congress passed ERISA to protect the interests of participants in employee benefit plans and their beneficiaries. 29 U.S.C. § 1001(a) and (b). The debtors' effort to set off the overpayments against the current deficiencies is thwarted by a provision of ERISA found at 29 U.S.C. § 1103(c) which states in pertinent part as follows:

(c) Assets of plan not to inure to benefit of employer; allowable purposes of holding plan assets

(1) Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

(2)(A) In the case of a contribution, or a payment of withdrawal liability under part 1 of subtitle E of subchapter III of this chapter—

(1) made by an employer to a plan (other than a multiemployer plan) by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution, and

(ii) made by an employer to a multiemployer plan by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

Our district court has recently construed this provision to mean that an employer

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

has no cause of action under this provision to seek restitution of erroneously made contributions. *Crown Cork and Seal Co., Inc. v. Teamsters Pension Fund of Philadelphia and Vicinity,* 549 F.Supp. 307 (E.D.Pa.1982), *aff'd mem.,* 720 F.2d 661 (3d Cir.1983). Section 1103(c) "expresses an intent to allow, but not require the trustees to return contributions if they choose to do so, as an exception to their strict fiduciary duties to maintain the fund for the benefit of employees." *Crown,* 549 F.Supp. at 311. *Hardy v. National Kinney of California, Inc.,* 571 F.Supp. 1214 (N.D.Cal. 1983); *see also, Teamsters Local 639—Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865 (4th Cir.1981); *R.V. Cloud Co., Inc. v. Western Conference of Teamsters Pension Plan, Trust Fund,* 566 F.Supp. 1426 (N.D.Cal.1983); *E.M. Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension,* 517 F.Supp. 1122 (D.Minn.1981) (payments erroneously made during time periods provided in § 1103(c)(2) "must be refunded if equity so requires," 517 F.Supp. at 1124). Although this does not necessarily preclude the allowance of setoff against current obligations to the fund, the principles and policies [2] supporting the *Crown* decision apply with equal force to the issue at bench.

Since ERISA was not passed by Congress until September 2, 1974, the bar provision of § 1103(c) may not apply to the erroneous contributions made during the four year period prior to that date, but once again we find that the rationale behind *Crown* contravenes the allowance of restitution. From the purpose of the statute as set forth in § 1001 and § 1103, we educe Congressional intent as supplanting the common law right payments with the mechanism provided in § 1103(c) to the extent payments were made prior to the passage of ERISA although the request for restitution was first made after the passage of the statute.

The debtors' sole basis for undercutting the authority of *Crown, supra,* is a bankruptcy lawyer's oft heard argument of last resort "that the Bankruptcy Court is a court of equity and is governed by equitable principles." In the face of compelling authority from our own district court, the debtors' appeal to equity holds little sway. We will enter an order denying the relief requested in the debtors' complaint.

---

2. The principles behind the *Crown* decision are expressed in the following language:

On its face then, the statute imposes no requirement on the trustees to return mistaken contributions. To impose such a requirement by implication would violate the underlying statutory scheme. ERISA's primary purpose is to protect the integrity of pension funds for the benefit of employees and their beneficiaries. To that end, fund fiduciaries are strictly required to discharge their duties solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104. To impose a right to restitution in favor of employers could severely undermine the funds' integrity. Mistaken contributions, once invested, may be just as essential to the funds' integrity and stability as non-mistaken contributions. The statutory language itself recognizes this by allowing and not requiring a fiduciary to disgorge the funds. ERISA surely did not intend to impose the risk of mistaken contributions on the funds, particularly since the employer is in the best position to monitor the amount of its own contributions.

*Crown,* 549 F.Supp. at 311–12.