**DUMAC FORESTRY SERVICES, INC., Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,** National Electrical Benefit Fund, Ralph A. Leigon and Robert L. Higgins, Individually and as Trustees of N.E.B.F., Defendants.

No. 83–CV–1627.

United States District Court, N.D. New York.

May 19, 1986.

Willis D. Birch, Binghamton, N.Y., for plaintiff.

Blitman & King, Syracuse, N.Y. (Jules L. Smith, of counsel), for defendants.

MEMORANDUM–DECISION
AND ORDER

McCURN, District Judge.

1. *Background*

The plaintiff Dumac Forestry Services, Inc. (Dumac) has brought this action seeking overpayments mistakenly made to the defendant National Electrical Benefit Fund (NEBF).[1] Under the terms of successive collective bargaining agreements executed by the New York State Tree Trimming and Line Clearance Contractors and Local Union No. 1249, International Brotherhood of Electrical Workers (IBEW), Dumac was required to make contributions on behalf of its employees to the NEBF in an amount equal to one percent of Dumac's gross monthly labor payroll.[2] From October 1977 through June 1982, Dumac erroneously made payments in an amount equal to three percent of its gross monthly payroll. By letter dated July 28, 1982, Dumac notified the NEBF that it had regularly paid at the higher rate during the aforementioned period. The NEBF subsequently refunded excess contributions made from July 1979 through June 1982 in compliance with the trustees' policy which limited refunds to a thirty-six month period. The NEBF refused to refund those contributions made from October 1977 through July 1979. These payments form the basis of this controversy.[3]

The court has before it plaintiff's motion for summary judgment seeking a refund of the disputed overpayments or, in the alternative, seeking an offset of monthly contributions due now and in the future with the overpayments already made. The defendants cross move for summary judgment on the grounds that plaintiff's cause of action under the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1985) (ERISA) must fail because the trustees'

---

1. The complaint alleges common law causes of action for restitution from the NEBF and for breach of fiduciary duty by NEBF trustees Ralph Legion and Robert Higgins in failing to notify Dumac of its overpayments. The cause of action against the IBEW was dismissed by stipulation of the parties on March 5, 1985.

2. Although Dumac was not a party to the agreement, it was bound by it.

3. Plaintiff seeks $20,733.11 in unreturned payments together with interest, attorney's fees and punitive damages.

policy restricting refunds was promulgated through the reasonable exercise of their discretion and that plaintiff's common law claims based on the alleged fraud and negligence of the trustees are pre-empted by ERISA.

## 2. *Discussion*

This case is ripe for summary judgment. No disputed issues of fact exist.[4] The sole issue before the court is whether Dumac, as a matter of law, is entitled to a full refund of its mistaken overpayments under either federal common law principles of restitution or under section 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A) (1985).[5]

### A. *General Equitable Principles*

ERISA provides that plan assets shall never inure to the benefit of the employer and shall be held for the exclusive benefit of the plan participants and their beneficiaries. ERISA, section 403(c)(1), 29 U.S.C. § 1103(c)(1). The Multiemployer Pension Plan Amendments Act (MPPAA) amended the foregoing section and created a limited exception to the general rule.[6] Section 403(c)(2)(A)(ii) provides, in relevant part:

> In the case of contribution ... made by an employer to a multiemployer pension plan by a mistake of fact or law [section 403(c)(1)] shall not prohibit the return of such a contribution or payment to the employer within six months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii).

The court must determine whether section 403(c)(2)(A)(ii) necessarily entitles the plain-

---

**4.** The facts in this action were stipulated to by the parties.

**5.** Defendants do not specifically address the issue of whether an implied right of action exists in favor of an employer under section 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A). At least one court has found an implied right of action. *See Award Service, Inc. v. N. Cal. Retail Clerks Union,* 763 F.2d 1066 (9th Cir.1985); *contra Crown Cork & Seal, Inc. v. Teamsters Pension Fund,* 549 F.Supp. 307 (E.D.Pa.1982), *aff'd mem.,* 720 F.2d 661 (3d Cir.1983) (no implied right of action for employer under section 403; language of statute permissive because mistaken contributions may be essential for the fund's integrity). The majority of case law allows recovery of mistaken contributions according to general equitable principles. These cases apply a federal common law of unjust enrichment. *See, e.g., Award Service,* 763 F.2d 1066; *Peckham v. Board of Trustees,* 719 F.2d 1063 (10th Cir.), *modified and reaff'd,* 724 F.2d 100 (1983) (recovery allowed for funds erroneously paid by participants for their own account); *Teamsters Local 639 v. Cassidy Trucking, Inc.,* 646 F.2d 865 (4th Cir.1981) (construing section 403 as enacted prior to the 1980 amendment), *cited in, E.M. Trucks, Inc. v. Central States Southeast & Southwest Area Pension Plan,* 517 F.Supp. 1122 (D.Minn.1981) (holding that employer must be refunded if equity so requires); *Airco Industrial Gases v. Teamsters Health and Welfare Fund,* 618 F.Supp. 943, 6 E.B.C. 2409 (D.Del.1985); *Ethridge v. Masonry Contractors,* 536 F.Supp. 365 (N.D.Ga.1982) (employer may use mistaken contributions as setoff against trustees' claim for unpaid contributions); *contra Crown Cork & Seal,* 549 F.Supp. 307.

The court recognizes that the Second Circuit has held that a pension fund may not assert a federal cause of action under section 502, 29 U.S.C. § 1132, *see Pressrooms Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983), and that the list of parties empowered to sue under section 502 is exclusive. That holding does not necessarily bar, and is distinguishable from, the instant action. Clearly, the court has jurisdiction under 28 U.S.C. § 1331 for the purpose of determining whether an employer has an implied right of action under section 403(c)(2)(A) or whether an employer may sue for restitution of mistaken payments made to a pension fund. This court agrees with that line of cases which allows employers to seek recovery of overpayments. *See Award Service* at 1068–69.

However, plaintiff does not have a state cause of action for unjust enrichment. This is preempted by ERISA. *See Martin v. Hamil,* 608 F.2d 725 (7th Cir.1979), *cited in, Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744 (9th Cir.1985); *see generally, Amato v. Western Union International, Inc.,* 773 F.2d 1402 (2d Cir.1985) (upholding district court's finding that ERISA preempted any state law claim for unjust enrichment but noting that in appropriate circumstances courts may fashion federal common law under ERISA).

**6.** Before the 1980 amendment, section 403(c)(2)(A) provided that employer contributions made by mistake of fact could be returned only within one year after payment of the contribution.

tiff to all of its erroneous payments or whether the statute is permissive, only requiring the NEBF to act in a reasonable manner in determining refund eligibility.

In the case at bar, the trustees have promulgated a policy which restricts refunds to the thirty-six months preceding the determination that payments were incorrectly made by an employer.

General principles of equity govern the return of contributions made by mistake. *See, e.g., Award Service Inc. v. N. Cal. Retail Clerk's Unions*, 763 F.2d 1066 (9th Cir.1985). This is so whether the cause of action derives from federal common law or is implied by statute. An examination of the circumstances which led to the employer's mistake here is, therefore, in order.

It is undisputed that the collective bargaining agreement governing fund contributions required Dumac to make monthly deposits at a rate of one percent of its gross labor payroll. A payroll report was to be submitted along with the contributions. The NEBF provided Dumac with the appropriate forms. It is the contents of these forms which constitute the basis of Dumac's argument that equity demands the refund of all overpayments. The front side of the form stated that payments were to be calculated at a rate of three percent of the monthly payroll whereas the reverse side directed that a rate of one percent be applied. The front of the form specifically indicates that all checks are to be made payable "to the [NEBF] for 3% of gross earnings." In contrast, the reverse side contains instructions for calculating contributions which provide, in relevant part:

> "Computation of Contribution—*One Percent of the Grand Total* of column five, page one should be entered in the space immediately below column five and a check drawn to the order of the [NEBF] for the amount and forwarded with the report to the Local Board indicated."
> (emphasis added)

The form provided by the NEBF clearly contained contradictory instructions. However, it does not necessarily follow that the NEBF "knowingly" furnished Dumac with incorrect information.

The NEBF counters Dumac's assertions that it was intentionally misled by noting that the form it provided Dumac was identical to those it sent to all outside electrical contractors contributing to the NEBF. In fact, as of December 1982, three hundred and thirty-three (333) of three hundred and thirty-eight (338) outside electrical contractors contributing to the NEBF were required to pay three percent of their gross payroll per month. *See* Defendant NEBF's Answer to Plaintiff's Interrogatories Nos. 9–11. Consequently, the NEBF may well have provided the incorrect information through mere inadvertence. Moreover, Dumac, in its brief, asserts that "the sole cause of error" lay with the company's new bookkeeper who started in 1977 and was unaware that the terms of the collective bargaining agreement differed from the payroll report forms. Construing the facts most favorably to the NEBF, as opponent to Dumac's motion for summary judgment, the court finds that Dumac has failed to establish that NEBF wilfully misrepresented Dumac's obligations.

In the absence of any showing of intentional misrepresentation by the NEBF, the court must determine whether Dumac justifiably relied on the payroll report form for instructions on how to compute the contribution due each month. Dumac is chargeable with the knowledge of the terms of the collective bargaining agreement governing its contributions to the NEBF. It also appears that Dumac actually knew that only one percent was mandated. In March of 1978, the IBEW local union asked Dumac to increase its contribution rate to three percent. Dumac, however, refused to reopen the bargaining agreement. Given the foregoing, the court finds that both the plaintiff and defendant contributed to the error in payments. In the instant circumstances, however, the balance of equities tips in the plaintiff's favor. The NEBF's payroll report forms were indeed misleading. The court finds that this form was the chief source of the

error committed by Dumac. Because the NEBF has failed to demonstrate that a refund of the payments would endanger the fund's integrity, the court holds that general equitable principles establish Dumac's right to receive excess contributions. The amount of contributions it is entitled to, however is another matter.

### B. *Trustees' Discretion*

The existing case law has addressed, for the most part, only whether an aggrieved employer may sue for excess contributions. The overwhelming consensus is that general equitable principles determine an employer's right to a refund. The extent of that refund has seldom been addressed.

■ In the instant action, the NEBF urges this court to extend its analysis and consider the trustees' policy limiting refunds to thirty-six months. Ordinarily, the court may review trustees' actions only under an "arbitrary and capricious" standard. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund,* 698 F.2d 593 (2d Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1984). At least one court has applied a refund policy in this context. In *Fuller Cinder Co. v. Central States Pension Fund,* 2 E.B.C. 2458 (E.D.Mich.1982), an employer mistakenly made contributions to a pension fund for a fourteen year period. The district court upheld the trustees' rule limiting recovery to one year and, in so doing, noted that the exception created by § 403(c)(2)(A) is discretionary and as long as the trustees act in a reasonable manner and are not arbitrary and capricious, their decision will not be disturbed. *Id.* at 2460; *see Peckham v. Board of Trustees,* 719 F.2d 1063, 1066 (10th Cir.), *modified and reaffirmed,* 724 F.2d 100 (1983). In the case at bar, any determination concerning the *amount* of overpayments to be returned from the fund would necessarily entail a review of the trustees' exercise of discretion in adopting the three-year policy. Therefore, the court holds that general equitable principles determine whether an employer is entitled to *any refund,* but

that a policy adopted by the trustees of a pension fund will be reviewed under the "arbitrary and capricious" standard.

The NEBF argues that its policy furthers several legitimate interests. The NEBF, in its brief, states that the rule protects the fiscal integrity of the fund and protects the fund from discrepancies which might arise from allowing refunds when these amounts have been factored into benefit increases for employee participants. In addition, the rule obviates the evidentiary problems associated with litigating long-term claims. Finally, the NEBF has stated that the rule is uniformly applied in all instances of mistaken contributions. The NEBF contends, therefore, that the court must, as a matter of law, find that its policy was not implemented in an arbitrary and capricious manner and that the policy itself is not arbitrary.

### C. *Summary Judgment*

■ When considering a motion for summary judgment, a court must insure that there is no genuine issue of material fact, that all reasonable inferences are drawn against the moving party, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastway Construction Company v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). Outside of the defendants' conclusory allegations that their policy protects the fund's integrity and protects against any discrepancies that might arise from refunding funds already factored into benefit increases, there is nothing in the record to indicate that these assertions are true. The defendants have failed to submit any affidavits or documentary evidence demonstrating the utility of the rule, or why a three-year period, rather than, for example, a five-year period was chosen. The court is not satisfied, therefore, that the trustees' policy limiting refunds to three years is, as a matter of law, reasonable and not arbitrary. Because the NEBF has failed to meet the heavy burden of demonstrating the absence of any material issues of fact, the court must deny the defendants' motion

for summary judgment. This is true even though the plaintiff has not submitted any evidentiary material showing that either the adoption of the policy or the terms of the rule itself are arbitrary. The movants have failed to meet the burden under Federal Rule of Civil Procedure 56(c). *See Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985); *see also Zanghi v. Incorp. Village of Old Brookville*, 752 F.2d 42 (2d Cir.1985). The court declines to find that the policy, as applied to the plaintiff's request, is, without question, reasonable. However, this ruling does not necessarily entitle the plaintiff to a return of its funds. The court also holds that the plaintiff has failed to show that the trustees' policy is, as of a matter of law, arbitrary. Consequently, plaintiff's motion for summary judgment seeking a *refund* is denied.

### D. *Order Offsetting Payments Versus Refund*

■ In the alternative, the plaintiff seeks an offset of future payments by utilization of the balance of the mistakenly paid funds on deposit. Defendants have not argued that a set off would endanger the integrity of the fund's existing assets or that it would affect any benefit increases calculated on the basis of the fund's existing assets. Courts have allowed employers to set off past overpayments pursuant to section 403 in trust fund suits to obtain underpayments. *See Ethridge v. Masonry Contractors, Inc.*, 536 F.Supp. 365 (N.D.Ga.1982); *Service Employees Int'l Union Local 82 Labor-Management Trust Fund v. Baucom Janitorial Service, Inc.*, 504 F.Supp. 197 (D.D.C.1980). An offset would insure that the plan's assets would not "inure to the benefit of an employer" which is, as noted hereinbefore, specifically prohibited by ERISA. Consequently, on the basis of the record before it, and in the absence of any allegations or evidence offered by the defendants that an *offset* would endanger the fund's stability or violate the general principle that plan assets may not benefit an employer, the court finds that the plaintiff is entitled to

the $20,733.11 it erroneously paid the defendant as an offset to future payments due. This follows because general equitable principles mandate the crediting of plaintiff with the mistaken overpayments and because an offset would not transgress any claimed purpose of the policy underlying the trustees' three-year rule (assuming the policy to be reasonable). Summary judgment is granted to the plaintiff to this extent.

### 3. *Interest on the $20,733.11*

■ Dumac also seeks interest accrued on the $20,733.11. Section 403(c)(2)(A) does not specifically provide for the award of interest. Such an award would, in fact, violate the prohibition set forth in paragraph one of that section, that is, that the assets of a pension plan shall never inure to the benefit of the employer. Consequently, the plaintiff may not recover interest. *See, generally, Peckham*, 724 F.2d at 101.

### 4. *Attorney's Fees*

Plaintiff also claims attorney's fees. Assuming *arguendo* that an employer could state such a claim under ERISA, the court should consider the following factors in making a decision: (1) the bad faith of the opposing party, (2) the opposing party's ability to satisfy such an award, (3) would the award deter others from acting in a similar manner, (4) whether the plaintiff acted on behalf of all participants and beneficiaries of the plan, (5) whether the action involved a significant legal question about ERISA itself, and (6) the relative merits of the parties' positions. *See generally, Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180 (W.D.N.Y.1980), *aff'd*, 642 F.2d 664 (2d Cir.1981).

■ Applying the foregoing factors, the court finds that the plaintiff is not entitled to an award of attorney's fees.

### 5. *State Claims of Fraud and Negligence Against Trustees*

The defendants contend that Dumac's state common law claims based on fraud

and negligence must be dismissed because they are pre-empted by federal law. The court agrees.

Section 514(a), 29 U.S.C. § 1144(a) provides that ERISA "shall supersede *any and all State laws* insofar as they may now or hereafter *relate to* any employee benefit plan." (emphasis added). The Supreme Court has interpreted this section expansively. ERISA preempts not only state laws directly covering subject matter included in ERISA, but also any laws which "have a reference to or connection with" an employee benefit plan. *Shaw v. Delta Airlines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), *quoted in Metropolitan Life Insurance Co. v. Mass.,* —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *see District 65 UAW v. Harper & Row Publishers, Inc.,* 576 F.Supp. 1468 (S.D.N.Y.1983).

▮ In the case at bar, the state claims for fraud and negligence are pre-empted. Even a state's general common law will be pre-empted if it relates to an employee benefit plan. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215–16 (8th Cir.) (finding that Congress intended to provide uniform remedies in enacting ERISA), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Section 403(c)(2) provides for the return of contributions to an employer who has made erroneous payments to a pension plan. The section has been interpreted by courts to leave refunding to the trustees' discretion. Although this discretion is not absolute, and refunds must be made in accordance with general equitable principles, the trustees are not required to issue refunds in every situation. As noted earlier, they must exercise their discretion in a reasonable manner. If the court were to allow state actions against trustees for fraud or negligence, state law would clearly set standards for the exercise of trustees' discretion. Undoubtedly, such action would "relate to" employee benefit plans. *See, e.g., Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985) (finding employees' state law claims for severance pay pre-empted), *petition for cert. filed,* 54 U.S.L.W. 3179 (U.S. Oct. 1, 1985) No. 85–460); *Authier v. Ginsberg,* 757 F.2d 796 (6th Cir.1985) (finding fiduciary's state claim based on unlawful discharge preempted), *cert. denied,* —— U.S. ——, 106 S.Ct. 208, 88 L.Ed.2d 177; *Dependahl, supra* (finding employee's state claim for tortious interference with contract pre-empted); *Justice v. Bankers Trust Co.,* 607 F.Supp. 527 (D.C.Ala.1985) (holding employees' state claims for fraud and misrepresentation against plan fiduciaries preempted); *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421 (E.D.Mo.1984) (holding beneficiary's claim against fiduciary for breach of duty pre-empted); *District 65 UAW v. Harper & Row Publishers,* 576 F.Supp. 1468 (S.D.N.Y.1983) (finding state law claims of fraud, unjust enrichment, conversion, and tortious interference with contract pre-empted); *Ogden v. Michigan Bell Telephone Co.,* 571 F.Supp. 520 (E.D.Mich.1983) (finding employee's common law claim for fraud pre-empted). The court further notes that if the employer were allowed to sue a fund in tort and claim damages in excess of its contributions, the assets of the plan might very well inure to the employer's benefit, which is prohibited by 29 U.S.C. § 403(c)(1). Consequently, plaintiff's state common law causes of action for fraud and negligence are pre-empted. These claims clearly "relate to" employee benefit plans and maintenance of such actions would in all likelihood affect the administration of pension funds and violate federal policy. Furthermore, an employer has no standing to sue the trustees of a fund for breach of their fiduciary duties under section 502, 29 U.S.C. § 1132. *See Pressrooms Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

### 6. *Punitive Damages*

▮ Even if the court were to allow the plaintiff to assert its action against the trustees for fraud and negligence under ERISA, the plaintiff would not be entitled

to collect punitive damages from either the fund or the trustees individually. In *Mass. Mutual Life Ins. Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that when an employee sues the trustees of a pension fund under 29 U.S.C. § 1109(a) for breach of fiduciary duty, no extra-contractual damages may be awarded. The court also noted that a successful claimant could not recover from the trustees in their individual capacities. The Court specifically addressed the provisions of section 409(a), 29 U.S.C. § 1109(a), which together with section 502(a), 29 U.S.C. § 1132(a), permits participants and beneficiaries to sue fiduciaries for breach of their duties. The "stark absence—in the statute itself and in the legislative history—of any reference to an intention to authorize the recovery of extra-contractual damages" led to the Court's conclusion. *See Id.* at 3090. Here, as in *Russell,* there is no indication in the statute that Congress intended that an *employer* can sue the trustees for breach of fiduciary duty in an individual capacity. In fact, ERISA was enacted in order to protect the participants of a fund. It was not designed to safeguard the rights of employers. As in *Russell,* the court is "reluctant to fine-tune an enforcement scheme crafted with such evident care as the one in ERISA," and "the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive scheme including an integrated system of procedures for enforcement." *Id.* Section 403(c)(2)(A) provides for the return of excess contributions. It omits any mention of extra-contractual damages. Consequently, Dumac's claims for extra-contractual, punitive damages against either the trustees individually or against the fund, must be dismissed.

Accordingly, it is hereby

ORDERED, that

1. The defendants' motion for summary judgment is denied.

2. The plaintiff's motion for summary judgment seeking a refund is denied.

3. The plaintiff is granted summary judgment in the amount of $20,733.11 as an offset to future payments due and to become due to defendants.

4. The plaintiff's pendent state law claims are dismissed.

5. The complaint is dismissed in its entirety.