[No. 30347. *En Banc.* October 3, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Pierce County, Respondent,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 185 P. (2d) 134.

*Lloyd Shorett, L. C. Brodbeck,* and *Max R. Nicolai,* for appellants.

*Theo. L. DeBord* and *George H. Boldt,* for respondent.

MALLERY, C. J.—This is an equitable action seeking the reformation of a contract on the ground of mutual mistake. From a judgment granting the relief sought, the defendants appeal.

Prior to the year 1913, floods in the White river had caused great damage in the valley between Seattle and Tacoma in both King and Pierce counties. The problem being one that concerned both counties, and it being difficult for one county to act except in conjunction with the other, the legislature in 1913 (chapter 54, p. 156) passed an act permitting counties with such problems to enter into contracts with each other which would be operative in perpetuity or for any term of years that might be agreed upon in order to effect a systematic and efficient river control project. In accordance with this act, the counties of Pierce and King on January 19, 1914, entered into a contract, wherein it was recited that the White river, which had caused all or most of the flood damage, had flowed most of the time in the past into the Duwamish river and thence into Elliott bay in King county, but that on occasions it had been

diverted into Stuck river, a tributary of the Puyallup river which flowed into Commencement bay in Pierce county. It further recited the damage done and provided for a project confining the White river waters in a particular channel and diverting it perpetually into the Puyallup river. The contract provided a plan for carrying out this project and set up the inter-county river improvement commission, composed of the county commissioners of the two counties, with the authority and duty to execute it. It provided for the levying of taxes and raising of funds for effectuating the purpose of the contract and the share of the expense to be borne by each county.

The mutual financial obligation of the two counties for the main original construction and the subsequent maintenance of the project was separated into three separate periods of time providing for different amounts to be expended in each period.

The first period, which we may describe as the construction period, called for the expenditure of $1,500,000 and contemplated completion of this phase of the work in six to eight years. Incidentally, it may be stated that disastrous floods occurring during this period destroyed much of the work accomplished, and it became apparent that, if the objectives of the contract were to be attained, additional work and funds would be necessary.

The second period was provided for in the contract as follows:

"After the work of construction shall have been completed, a fund shall be created in each county to be known as the 'Inter-County River Improvement Fund,' hereinafter referred to, and which may be hereafter referred to, as the 'upkeep fund.' The upkeep funds shall be created *for the purpose of protecting and keeping in good order, repair, and efficiency the said work* and of protecting the banks of said river from erosion and of confining the waters in their channel.

"Unless otherwise agreed upon by the boards of county commissioners of the two counties, acting separately, said funds shall be fifty thousand dollars ($50,000), in the aggregate, each year *for the first twenty-five years* following the

completion of the construction work, and the same shall be contributed on the same basis as the construction funds, to wit, sixty per cent by King county and forty per cent by Pierce county; and if the upkeep fund created for any one year shall not all be used for that purpose, the amount to be raised in the succeeding year shall be reduced accordingly." (Italics ours.)

The third period was provided for in the contract as follows:

"After the expiration of said 25 year period, *the obligation of upkeep shall continue on the same basis of contribution for 74 additional years,* but the amount to be expended in any year for that purpose shall be determined by the joint action of the two boards in joint meeting assembled, and the tax levy shall be on the basis so determined, but shall not exceed in any one year the aggregate sum of $50,000.00.

"If for any year the amount to be raised for upkeep shall (by agreement, evidenced by separate resolutions of the two boards of county commissioners) be over fifty thousand dollars ($50,000), the excess over fifty thousand dollars ($50,000) shall be contributed equally by the two counties." (Italics ours.)

It is this third maintenance period with which we are here concerned.

The destruction of much of the original installations previously mentioned was specifically called to the attention of the inter-county river improvement commission by their engineers, Mr. Roberts and Mr. Thompson, who disagreed for a while as to the amount of money necessary to replace them effectively. Finally, they did agree on a plan and the estimated cost thereof, and on August 31, 1921, the parties entered into the supplemental agreement for executing the plan over which this controversy arose. By that supplemental agreement, these words were added to the contract of January 19, 1914, to provide the additional funds needed:

"Provided, that said funds shall be One Hundred Twenty Thousand Dollars ($120,000.00) in the aggregate each year for the period commencing January 1, 1922, and ending December 31, 1926."

In other words, it was found necessary to increase the expenditure of funds from fifty thousand to one hundred twenty thousand dollars per year for the first five years of the second period of the contract.

The manner in which the parties entered into the supplemental agreement was that the King county and Pierce county commissioners separately adopted resolutions agreeing to it.

The supplemental agreement contained a paragraph (2) which provided:

"It is expressly stipulated and agreed that said contract dated January 19, 1914, as modified and amended by this supplemental agreement, shall be and remain in full force and effect in all respects as though the provisions of Paragraph 1 of this supplemental agreement had been included in and made a part of said original contract upon its execution."

The form of the supplemental agreement then followed the pattern used by the legislature in amending statutes, that is to say, it substituted a reworded paragraph 5 for the former paragraph 5 in the original contract. The language of the supplemental paragraph 5 was exactly the same as before so far as it treated the subject matter thereof, with two exceptions. First, it added the part heretofore set out increasing the amount to be spent for a five-year period, and, second, it omitted that part of the original paragraph 5 which provided for the third period of seventy-four years of maintenance work. Thus, it is apparent that one who did not have the old contract before him or was not intimately enough acquainted with its wording to recall that the seventy-four-year period here in question was provided for in that particular paragraph, would not be apprised by the language of the supplemental agreement, which was a separate instrument, that the seventy-four-year period of the original contract was omitted or in any way affected by it.

On the other hand, one who was aware that it was omitted and that the omission was intentional could scarcely con-

tend that it remained a part of the contract between the parties.

The respondent, plaintiff below, in seeking a reformation of the contract, contended that the omission in the supplemental agreement was by mistake, and that no one intended to eliminate the seventy-four-year period in question.

The appellants, of course, took the opposite position.

■ Only two of the commissioners of the two counties as of the time of the execution of the supplemental agreement were still alive at the time of trial. They were both Pierce county commissioners, and they gave positive testimony that it was not the intention of anyone concerned to eliminate the seventy-four-year period from the contract. They also gave negative testimony that they had never heard the elimination of that period mentioned by anyone on any occasion.

A former deputy prosecuting attorney who acted for the King county commissioners gave the only positive testimony that it was discussed, or that it was the intention of the parties to eliminate the seventy-four-year period.

The minutes of the meetings of the inter-county river improvement commission during the time here in question are very brief, and it is sufficient to say that there is no hint in any of them that the seventy-four-year period was being considered. The oral and written reports of the engineers were naturally concerned with the engineering problems and throw little light upon the question other than the negative testimony that no discussions were had upon the question of the seventy-four-year period.

The trial court found that the parties did not intend to eliminate the seventy-four-year period from the contract and so held, and we find from an examination of the entire record that there is sufficient evidence to support that finding.

Appellants make the following assignments of error:

(1) Erroneous admission of hearsay and opinion evidence. (2) Overruling of appellants' demurrer on ground that complaint does not state facts sufficient to constitute a

cause of action, and that the action has not been commenced within the time limited by law. (3) Failure to grant appellants' motion for dismissal at conclusion of plaintiff's case. (4) Failure to grant appellants' motion for dismissal at conclusion of the case. (5) Entry of findings of fact, conclusions of law, and judgment.

Under assignments 2, 3, and 4, appellants make their chief contention as follows:

"This being an action for reformation of a written instrument on the ground *of fraud* and mistake, *the statute of limitations begins to run from the date of the discovery of the fraud,* and it is incumbent upon the complainant to plead and prove that *the fraud* or mistake was not discovered, and by the exercise of reasonable diligence could not have been discovered within three years next to the commencement of the action." (Italics ours.)

Appellants cite ample authority, with which we have no quarrel, for the rule in fraud cases for which they contend. However, this is not a fraud case. By the pleadings it is an action for reformation of a contract based on mutual mistake. It was so treated and considered by the trial court. The respondent's evidence was directed to the question of mistake, and the issue between the parties was over the intention of the makers of the supplemental agreement. Perhaps it would have been better for the respondent not to have added the word *fraud* to the word *mistake* and others of like import in the wording of the complaint, but that did not convert the issue into one of fraud or mislead anyone. It must be treated as surplusage so far as defining the issues of the case as sounding in fraud or in mutual mistake is concerned.

The rule as to laches and the statute of limitations in cases of reformation of contracts based on mistake, is different from that governing fraud cases.

Admittedly, twenty-five years elapsed from the time the mistake was made until the present action was commenced, but during that time King county was complying with the executory contract (except temporarily during the pendency of a mandamus proceeding) and regu-

larly and fully making the contributions required of it under the second period of twenty-five years of the contract.

In equitable actions for reformation on the ground of mistake, the rule on the question of when the period of limitation or laches commences to run is as stated by this court in *State v. Lorenz*, 22 Wash. 289, 60 Pac. 644:

". . . that the statute did not begin to run against the right of respondent to reform the deed [because of a mistake therein] until the assertion on the part of appellants of their adverse claim."

In *Chebalgoity v. Branum*, 16 Wn. (2d) 251, 133 P. (2d) 288, we said:

"Nor is his right to maintain it [an action for reformation grounded on mistake] impaired by lapse of time, for the bar of the statute of limitations does not begin to run until the assertion of an adverse claim against the party seeking reformation."

The rule is also stated in 53 C. J. 1003, reformation of instruments, as follows:

"[§ 155] C. Time for Bringing Action. An action to reform an instrument may be brought as soon as the cause of action accrues. . . . On the other hand, a party to an instrument is under no obligation to seek its correction before his cause of action is finally vested or while he is unaware that any opposition will be made to carrying out the actual agreement, where for a long time the rights and duties of the parties are the same under the writing and under the terms which it is alleged were intended, and the failure to take any action toward reformation until his right vests or opposition is manifest does not prejudice his suit."

Accordingly, we hold that the action is not barred and was timely brought.

During the cross-examination of the deputy prosecuting attorney who had acted for the King county commissioners in preparing the supplemental agreement, there was received in evidence an excerpt from the Seattle Post-Intelligencer dated Thursday, September 1, 1921, purporting to give an account of the joint meeting of the inter-county river improvement commission of the previous day, containing the following:

"The original contract made in 1914 and providing for the control of the flood waters of the three streams by the two counties for a ninety-nine year period will not be affected in any way by the action taken yesterday, it was announced."

We readily agree with appellants that newspaper articles are hearsay and inadmissible as evidence to prove the truth of the statements contained therein. However, we do not think that, under the special circumstances of its admission in this case, it was introduced for that purpose. The appellants had affirmatively pleaded laches in their answer to the complaint and, by their theory of the case, were contending for the rule as heretofore mentioned that respondent should have discovered the mistake, or fraud as they considered it, at the time the supplemental agreement was entered into. Their witness, the former deputy prosecuting attorney, had testified on direct examination that the subject of eliminating the third period of seventy-four years from the contract had been discussed. On cross-examination, the respondent was seeking to affect his credibility by impeachment. Had the witness admitted having read or authorized the article, it would have been competent for that limited purpose. He denied any knowledge concerning the article, and so the respondent's effort came to nothing.

In such a situation, the rule is that a trial court, sitting without a jury, will not be presumed to have been misled or to have fallen into error because of being unable to disregard such evidence. The appellants ask for a dismissal of the case. Naturally they do not seek a new trial because of such claimed errors. Since in this case we find ample competent evidence to sustain the trial court and do not indulge the presumption that its decision would have been different but for the evidence complained of, we will not dismiss the case for this reason.

*State ex rel. Schlarb v. Smith,* 19 Wn. (2d) 109, 141 P. (2d) 651, was an action between the same parties in which a question different from the instant one was presented, al-

though the same contract was involved. During the course of the trial, counsel for the appellants stated to the court:

"We are endeavoring to show that the bulk of the money has gone there [Pierce county] and all of it will go there [Pierce county] from this time on for the next seventy-five years."

As to this, appellants make the following contention:

"An argument of counsel in a prior case, made during colloquy with court and opposing counsel concerning conclusions of law regarding the interpretation of the provisions of a contract, which provisions are not in issue in that case, does not constitute an admission, nor are such conclusions binding upon the appellant in any manner in a subsequent litigation between the same parties."

To this contention, it is sufficient to say that neither the trial court nor we in reviewing the record treat the statement as an admission binding upon the appellants. They affirmatively pleaded laches and the statutes of limitations in their answer, and in the development of their theory of the case made an issue as to when the mistake should have been discovered. Respondent took the position that it was not held to a higher degree of care than appellants, whose position at the former trial was that as revealed by the statement quoted. Our holding on the question of laches, as hereinbefore stated, makes the question unimportant.

Since we are able to hold, without considering the evidence in the case to which appellants object, that the court's findings are amply supported by the record, there is no reason to dismiss the action.

The judgment is affirmed.

BEALS, STEINERT, ROBINSON, JEFFERS, SCHWELLENBACH, and HILL, JJ., concur.

SIMPSON and MILLARD, JJ., concur in the result.