BEATRICE WHITE *vs.* JOSEPH ERIC WHITE & another.

Essex.    March 7, 1963. — May 7, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Unjust Enrichment. Equity Jurisdiction,* Mistake, Unjust enrichment. *Evidence,* Of state of mind.

In a suit in equity to regain stock transferred by the plaintiff to herself and the defendant as joint owners, evidence of a statement made by the plaintiff in the defendant's presence after the transfer as to a disposition of the stock by will which she wished to make, and of the defendant's silence, was admissible to show the parties' state of mind. [79]

Where it appeared that when a widow transferred stock of hers to herself and her son as joint owners for convenience both were unaware of the legal effect of the transfer and believed that the mother would retain full ownership and right of disposition of the stock and intended that result, and neither intended that the son should take any present interest in the stock, and that after they had learned of the legal effect of the transfer the son refused to transfer the stock back to the mother, she was entitled in equity to the retransfer by him on the grounds of mutual mistake and unjust enrichment. [79–81]

BILL IN EQUITY filed in Superior Court on December 28, 1960.

The suit was heard by *Macaulay, J.,* on a master's report.

*C. Henry Glovsky* for the defendant Joseph Eric White.

*Bertram W. Allen* for the plaintiff.

KIRK, J. The defendant, Joseph E. White, only son of the widow plaintiff, appeals from a decree ordering the retransfer to the mother of certain certificates of stock which the mother as sole owner had transferred to her son and herself as "joint tenants with right of survivorship." Hazel White, wife of Joseph, was also named as a party defendant. The case was referred to a master. The defendants' exceptions to his report were overruled, their motion to recommit was denied, and the report was confirmed by interlocutory decrees, from which the defendants have appealed. Hazel White has not attempted to prosecute these appeals, nor did she join in Joseph's appeal from the final decree.

We summarize the facts found by the master. The mother, although well educated, was without any business experience. She did not know how to write a check. During her husband's lifetime the family checking account was in his name. The modest savings accounts and coöperative bank shares were in the names of her husband and herself jointly. The certificates of stock here in issue were in their joint names with right of survivorship. She had relied completely upon her husband in all financial matters. Upon the death of her husband on December 25, 1959, the funeral director suggested joint ownership of the stock with her son "to avoid probate expense." There was no

attorney for the husband's estate.  On January 8, 1960, in response to the advice of her son, the stock certificates were indorsed by her in blank and turned over to him for transfer to their joint names.  When the son presented the indorsed certificates to the president of the local bank for forwarding to the transfer agents, the president telephoned the mother to verify her signature and to inquire if she wished joint ownership with her son.  The mother replied in the affirmative.  A joint checking account was opened for the deposit of dividend checks.  All dividend checks have been deposited in this account.  The son has made no withdrawals.  At the time of the transfer and for several months thereafter the son did not understand the legal effect of the joint ownership of stock and intended that his mother during her lifetime should have the right to dispose of the stock any time she wished.  He did not then know that his mother could not use the stock without his signature.  The mother at that time and until November, 1960, believed that she would enjoy as of right all the benefits of the shares including the right to dispose of them at any time as she should choose including disposition by will. Although the mother was familiar with the words "joint tenant with right of survivorship" neither she nor her son was aware of their legal significance.  The mother wished to set up a trust consisting of some of the shares of stock for her great-grandchildren.  An unsatisfactory experience with a lawyer introduced to her by her son finally led the mother to consult a lawyer of her own choosing.  In November, 1960, she learned from him that she could not create the trust and could not dispose of the stock by will because the stock would pass upon her death to her son. Numerous requests thereafter for the return of the stock were met with refusals by her son who by that time had become aware that his acquiescence was necessary for any transfer.  The mother had no friends in Beverly where she lived.  She did not want to go anywhere.  Her son was her sole advisor; she asked him to "take care of everything." She relied upon his advice.  No consideration passed from

the son to his mother for the transfer of her stock to their joint names. No fraud or duress was practised by the son in obtaining the transfer.

The master concluded that the son bore a fiduciary relationship to his mother and had committed a breach of duty as a fiduciary; that there was a "mutual mistake of fact as to what they were intending to do"; and that the son held the stock in trust for the benefit of his mother.

1. The master properly admitted in evidence testimony by the mother that in the spring of 1960 she had informed the attorney selected by her son, in the latter's presence, that she wished to establish by will a trust made up of some of the shares of stock for the benefit of her great-grandchildren. The statement, and the apparent silence of her son in response thereto, tended to show the original and the continued state of mind of both parties relative to the transfer of the stock.

2. There is no merit to the appeals from the interlocutory decrees. The findings of the master were clear and complete, and were not inconsistent, contradictory or plainly wrong. The summaries of the evidence (there having been full compliance with the second paragraph of Rule 90 of the Superior Court [1954]) submitted by the master, amplify and support the findings of fact. The decree confirming the report was rightly entered. *New England Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 74–75.

3. Since the report shows on its face all the subsidiary facts, it is our duty, as it was the duty of the judge, to consider these findings together with the inferences that should be drawn therefrom, reach a conclusion, and cause a proper decree to be entered. *Murray* v. *Bateman,* 315 Mass. 113, 117. *McOuatt* v. *McOuatt,* 320 Mass. 410, 411.

It is not necessary to consider whether the decree could be supported on the basis of a breach of a fiduciary duty by the son. See *Ranicar* v. *Goodwin,* 326 Mass. 710. We think that the decree should be founded on the broad principle that equity acts to avoid unjust enrichment. The confirmed report establishes facts which call for the applica-

tion of this principle on the ground of mutual mistake. The findings make clear that the mother and son shared an intention to accomplish by this transfer a certain result, namely, that the mother should retain full ownership of the shares and that the son should be in a position to advise her about them, and that in the absence of any disposition of them by the mother, the son would succeed to the ownership of them upon her death. The findings clearly show also that the words used in the instrument of transfer resulted in a situation which was materially at variance with their common intention. It was not the intention of either party to create a present ownership interest in the son. Although the legal words of art were phonetically familiar to both parties neither party intended the result which their use produced. In these circumstances the refusal of the son to restore full ownership to his mother, and his claim of ownership based upon the words mistakenly chosen, are an attempt unjustly to enrich himself at the expense of his mother. The case plainly is controlled by the equitable doctrine fully explored and stated by Sheldon, J., in *Reggio* v. *Warren,* 207 Mass. 525, 534–536, "the important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties." The cases relied upon by the defendant are distinguishable. In *Taylor* v. *Buttrick,* 165 Mass. 547, the mistake, if any, was unilateral; and it was found as a fact by the single justice that the plaintiff's guardian, and the family lawyer who consulted with the plaintiff, reasonably supposed that the plaintiff "understood that the instrument irrevocably put the property out of her hands." *Id.* at 548. It was in this context that the court held, "If it is shown that the instrument was explained to her, and that she understood its contents, which is fairly to be inferred from the report in this case, there

is no mistake in a legal sense because its legal effect was not fully understood by her." *Id.* at 550. Similarly, in *Coolidge* v. *Loring,* 235 Mass. 220, 224, "the trustees who were parties to the instrument do not appear to have acted under any mistake or misunderstanding," and further " 'full, clear, and decisive proof' of the mistake" was lacking. In both of these cases the dispute centered on the future effect of the language of the instrument which accomplished the change of ownership, and not, as here, on whether the language conclusively effected a present transfer of ownership despite a mutual intention to the contrary. There is nothing in *Young* v. *Paquette,* 341 Mass. 67, which is inconsistent with what we say here.

The final decree entered by the judge was right and is affirmed. The plaintiff is to have costs of this appeal.

*So ordered.*