**Lynn HASLEM and Joan H. Haslem, Plaintiffs and Appellants,**

**v.**

**Leland B. OTTOSEN; Agnes D. Ottosen, aka Agnes Dot Ottosen; his wife; Leland B. Ottosen Trust; Agnes Dot Ottosen Trust; and Bow Valley Petroleum, Inc., a corporation, Defendants and Respondents.**

No. 18749.

Supreme Court of Utah.

Sept. 10, 1984.

Arthur H. Neilsen, Clark R. Neilsen, Salt Lake City, for plaintiffs and appellants.

Patricia W. Christensen, Salt Lake City, for defendants and respondents.

HOWE, Justice:

This case is before us on plaintiffs' interlocutory appeal which we granted. Plain-

16. *Bailey, supra* n. 7, at 768.

tiffs sought to reform a warranty deed and to recover a $\frac{1}{11}$ mineral interest that purportedly passed to defendants under Utah's after-acquired title statute, U.C.A., 1953, § 57–1–10. Defendants counterclaimed, pleaded the statute of limitations (U.C.A., 1953, § 78–12–26(3)) as a defense to the complaint, and moved for partial summary judgment. The trial court granted the motion, ruling that the statute of limitations barred reformation of the deed by the plaintiffs, that they had breached their warranties of title contained in the deed, and that defendants were entitled to damages for that breach and to an accounting of all payments that plaintiffs had received from petroleum operations on the land. Plaintiffs appeal contending that summary judgment was improper because there existed issues of material fact as to when they discovered that there was an error in the deed and the trial court should not have ruled as a matter of law that their suit was barred by the statute of limitations.

 Because this is an appeal from a summary judgment for the defendants, we must view the facts in the record in the light most favorable to the plaintiffs. We will affirm a summary judgment only if the record reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bowen v. Riverton City*, Utah, 656 P.2d 434, 436 (1982).

In 1959 plaintiff Lynn Haslem acquired a large tract of farmland from his father who reserved the entire mineral estate. Lynn Haslem was always aware that he owned no mineral interest. Defendant Leland Ottosen approached Lynn Haslem in 1963 and offered to purchase some of his land to use as a pasture. After negotiations, they settled on a price of $106.25 per acre for two 80-acre tracts. That price was far below what the mineral estate alone would have cost. They discussed that no mineral rights were to be conveyed. The parties mutually agreed upon an attorney who Mr. Haslem knew had a good reputation to put their agreement into writing. The attorney had not worked for either party previously and represented both of them in this transaction. They informed him that no mineral rights were to be conveyed because plaintiffs did not own any. Because of this, the attorney thought that there was no need to mention the mineral rights in the warranty deed. He drafted the deed in the statutory form prescribed by § 57–1–12 which has the effect of a conveyance in fee simple "together with all the appurtenances, rights and privileges thereunto belonging." The deed was executed without any exception of mineral interests. Both Mr. Haslem and Mr. Ottosen believed at that time that it did not purport to convey any mineral rights.

Ottosens later acquired from Haslems a 29-acre tract connecting the two 80-acre tracts. Again, no exception of the mineral rights was made in the deed. The parties' intent to convey only the surface estate, the true meaning of the words of conveyance, and the parties' understanding of the effect of the instrument were the same as in the earlier transfer. Both deeds were recorded shortly after delivery.

In 1972, Mr. Haslem received a $\frac{1}{11}$ mineral interest in the two 80-acre tracts from his brother who had acquired the mineral interests from their father. Plaintiffs leased their $\frac{1}{11}$ interest in one of the two tracts to Chevron Oil Company which made the land part of a unitized drilling operation. Plaintiffs received rental and royalty payments for the next eight years because of the participation of their land in the unit.

Bow Valley Petroleum, Inc., obtained an oil and gas lease on the same land in January, 1980 (either from Ottosens, or from Chevron or from both, the record is unclear), and brought in a producing well in November, 1980. At that time, Bow Valley informed Haslems of the legal effect of the warranty deeds they had executed and explained that their $\frac{1}{11}$ mineral interest in the land had passed to the Ottosens by virtue of Utah's after-acquired title statute, U.C.A., 1953, § 57–1–10. The Haslems promptly sued in December, 1980, to reform the deeds and recover their $\frac{1}{11}$ mineral interest.

Both parties agree that plaintiffs' action is based on mutual mistake. The applicable statute of limitations, which was the basis of the trial court's ruling, is U.C.A., 1953, § 78–12–26(3). *Davidsen v. Salt Lake City*, 95 Utah 347, 81 P.2d 374 (1938). It provides:

Within three years:

. . . .

(3) An action for relief on the ground of fraud or mistake; but the cause of action in such case shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

The defendants contend that when the warranty deed was executed in 1963 without any exception of the mineral rights, it should have been apparent to the Haslems that none were being excepted and that they then had full notice and knowledge of all the facts constituting the alleged mistake of which they now complain. They cite *Weight v. Bailey*, 45 Utah 584, 147 P. 899 (1915), for the proposition that the parties to a contract are immediately chargeable with its provisions which are clearly written and expressed. Defendants further point out that Mr. Haslem in his deposition claimed that sometime in January, 1964, while negotiating the sale of the 29 acres, Mr. Ottosen volunteered to him that he thought the deed for the 160 acres was incorrect because "it was a warranty deed and it didn't reserve minerals." Following this conversation, Mr. Haslem wrote a letter to the attorney who had prepared the deed for them, asking whether it was correct. The attorney replied:

I talked with Mr. Ottosen about the mineral rights in the Warranty Deed and told him that there were none that were conveyed and that you were not guaranteeing any mineral rights as you have none.

Due to the fact that you could not make reservations of any oil and gas, you certainly could not convey any.

Defendants contend that Haslems discovered the facts constituting the mistake no later than when these events occurred and that the three-year statute of limitations began to run at that time. The trial court in granting the defendants' motion for partial summary judgment apparently agreed.

In asserting that there existed an issue of material fact as to when they discovered the facts constituting the mistake in the deed, plaintiffs attempt to construe "discovery" as meaning "the time at which an adverse claim is asserted." For this proposition, they cite as authority *State v. King County*, 29 Wash.2d 37, 185 P.2d 134 (1947), and *Cunnius v. Fields*, Okla., 449 P.2d 703 (1969). In Mr. Haslem's deposition, he stated that Mr. Ottosen acknowledged to him and the attorney in 1964 that the Ottosens owned no minerals in the property and that this was Mr. Ottosen's understanding until as late as 1980. In November, 1980, Mr. Ottosen stopped by the attorney's office to see whether he could claim any mineral rights in the property. The attorney again explained to him that the Haslems had never owned any mineral rights and had not conveyed any by the deed to the Ottosens. Mr. Ottosen replied simply that if he owned the rights, he wanted them. Plaintiffs thus contend that an adverse claim was not asserted until 1980. If we were to follow plaintiffs' interpretation of *State v. King County*, supra, and *Cunnius v. Fields*, supra, plaintiffs might be entitled to a reversal of the summary judgment and to a trial on the merits on that basis.

However, to reach our decision we do not need to broaden the meaning of "discovery" as used in § 78–12–26(3) so as to require an "assertion of an adverse claim." The statutes in both Washington and Oklahoma, which were involved in the two cases cited above, begin to run when "the cause of action shall have accrued." Wash.Rev. Code § 4.16.010, et seq.; 12 Okla.Stat.Ann. § 95 subd. 6. As a means to delay the sometimes harsh results of the running of those statutes, the Washington and Oklahoma courts have taken the route of delaying the accrual of the cause of action until there arises a dispute or an adverse claim; however, contrary to plaintiffs' argument,

they have not interpreted "discovery" to occur when an adverse claim arises. Under the Washington and Oklahoma decisions, a cause of action may accrue long after the discovery of the mistake.

Neither the statute of Washington nor Oklahoma has the relief clause found in our statute which delays the commencement of the running of the statute of limitations until *"discovery by the aggrieved party* of the facts constituting the ... mistake." (Emphasis added.) In *Gibson v. Jensen*, 48 Utah 244, 158 P. 426 (1916), this Court construed the predecessor to § 78–12–26(3) and held that discovery occurs when facts arise which would put a reasonably prudent person on notice to inquire into the matter. Additionally, if no inquiry is made, one is held to have discovered all that would have been revealed if reasonable inquiry had been made. Mr. Haslem made inquiry by asking the attorney who drew the deed for the parties if it was correct. The attorney responded by explaining to both that it was correct.

We disagree with the defendants and the trial court that as a matter of law the plaintiffs discovered the facts constituting the mistake made by the parties either in 1963 when the deed was executed or in January, 1964, when Mr. Ottosen suggested that there was an error in the deed. The mistake of the parties was not as to a factual matter which was either apparent or which could be readily ascertained without professional assistance. The mistake here went to the legal effect of a warranty deed in the statutory form with all of its provisions and without exceptions. None of the parties were schooled or trained in law so that they could tell whether its legal effect conformed to their intentions. Mr. Haslem promptly sought legal advice to resolve the doubt which had been raised. He was assured by the attorney who drafted the instrument that the legal effect of it was in accord with the parties' intentions not to convey any mineral interests. Both parties at that time accepted the attorney's opinion. There would be no basis for holding that Mr. Haslem then discovered the error of the attorney. Under the facts of this case that the Haslems owned no mineral interest, knowledge by Mr. Haslem that the deed contained no exception of them cannot be equated with knowledge of the legal effect of that omission, as defendants would have us do.

We have heretofore recognized that a warranty deed may be reformed to add a reservation of mineral rights which was contained in the contract of sale but omitted in the deed through a mistake of the scrivener. *Doxey-Layton Co. v. Clark*, Utah, 548 P.2d 902 (1976). It is true that in that case, unlike in the instant case, it does not appear that the parties were ever under a mistaken impression of the legal effect of the omission of the reservation. However, that difference is of no consequence in Haslems' entitlement to reformation. It is well settled that mistakes as to the legal effect of words used in a contract or deed, or of the absence of them, are subject to reformation by the courts. 3 A.L. Corbin, Corbin on Contracts § 619 (1960) states:

> If two parties are in clear agreement as to the factual and legal result that they wish to accomplish, and a deed or other document is drawn by a scrivener using words that do not produce that result, the case is a proper one for reformation of the instrument. The scrivener has made a mistake, either as to the result that he was instructed to produce, or as to the legal effect of the words that he used. It makes no difference whether this is called a mistake of fact or a mistake of law or a mistake of both together. With respect to the legal effect of the words, the two parties no doubt make the same mistake that the scrivener made; and they make it because they relied on him.

Restatement (Second) of Contracts § 155 (1979) is to the same effect. Illustrative of reformation of deeds because of mutual mistake as to the legal effect of its terms are *State v. Schwabe*, Mo., 335 S.W.2d 15 (1960) (mistake as to legal effect of failure of the parties to include in the deed a reservation of an easement of access to a

highway); *Pasotex Petroleum Company v. Cameron,* 283 F.2d 63 (10th Cir.1960) (mistake made in the assignment of an oil and gas lease without any reservation or exception of accreted lands which by operation of law and contrary to the intent of the parties passed with the legal description contained in the lease); *White v. White,* 346 Mass. 76, 190 N.E.2d 102 (1963) (mutual mistake in the legal effect of placing certificates of stock in joint tenancy between mother and son who did not intend that he have a present interest); and *Brodzinsky v. Pulek,* 75 N.J.Super. 40, 182 A.2d 149 (1962) (mutual mistake as to the legal effect of the parties' taking title to mortgages as tenants by the co-partnership).

Since the mutual mistake in the instant case went to the legal effect of the absence in the deed of any exception of the mineral interest, we would be closing our eyes to reality to hold that the Haslems discovered this mistake at the time of the sale or subsequently in January, 1964, when the question arose and Mr. Haslem contacted the attorney. We are in accord with the Supreme Court of Texas in *Sullivan v. Barnett,* Tex., 471 S.W.2d 39 (1971), that there are exceptions to the general rule that a grantor is charged with knowledge of the contents of his deed from the date of its execution, and that limitation begins to run on such date against any action to correct it. Said the court:

> However, equity and justice being the ultimate aims of all rules of law, this and other courts have not been so rigid in their application of this rule. Numerous exceptions are as well established as the rule itself. As shown by the cases hereinafter cited, this presumption that a grantor or grantee has immediate knowledge of a mutual mistake contained in a deed is rebuttable, and there are various circumstances, such as subsequent conduct of the parties as though the deed had not contained the error, which will excuse a delay in discovery of the mutual mistake. This court has never permitted the rule to blindfold it to the true facts concerning actual discovery of the mutu-

al mistake and subsequent conduct of the parties with respect thereto.

Id. at 45. In support of its statement, the court cited prior opinions of that court and of the Courts of Appeal of that state in which exceptions to the general rule stated above were recognized and applied. Most similar to the instant case is *McClung v. Lawrence,* Tex., 430 S.W.2d 179 (1968), and *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62 (1959), which involved reformation of a deed due to an alleged mutual mistake in the legal effect of a royalty reservation made therein. In both cases, the court reversed a summary judgment against the grantor, who sought reformation, and remanded the case for trial. Both cases held that the statute of limitations did not begin to run until the mistake was, or in the exercise of reasonable diligence should have been, discovered. See also *Smalley v. Rogers,* 232 Miss. 705, 100 So.2d 118 (1958).

On the facts contained in the limited record before us, we must hold that the trial court erred in granting summary judgment since there is no evidence that from the time of the execution of the deed in May, 1963, to January, 1964, when the parties went back to their attorney, the Haslems had discovered the facts constituting the mistake so as to set the statute of limitations running. The partial summary judgment granted the defendants is vacated, and the case is remanded to the trial court for further proceedings. Costs are awarded to the appellants.

HALL, C.J., STEWART and DURHAM, JJ., and DEAN E. CONDER, District Judge, concur.

ZIMMERMAN, J., does not participate herein.