Robert S. CHASE and Ernest C. Rank, Plaintiffs-Appellants,

v.

The TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Defendants-Appellees.

Donald R. ALLEN, et al., Plaintiffs-Appellants,

v.

WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, et al., Defendants-Appellees.

CA No. 83–3769.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1984.

Decided Jan. 31, 1985.

Roger Tilbury, Portland, Or., Lon N. Bryant, Wilsonville, Or., for plaintiffs-appellants.

Robert Westberg, Dennis K. Bromley, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before SCHROEDER, FARRIS, and REINHARDT, Circuit Judges.

FARRIS, Circuit Judge:

Taxicab drivers from the Broadway Cab Cooperative, Inc. appeal from the district court's denial of their claim for a refund of contributions made to a pension fund. We reverse and remand to the district court to determine first, whether plaintiffs may pursue this action under ERISA, and then, if it decides they may, whether the equities favor restitution, and finally if so, the amount of contributions to which the drivers are entitled.

## I. FACTS

Broadway Cab is owned exclusively by taxicab owners, who are referred to in the labor contract as "owner-drivers." The owner-drivers' testimony regarding the operation of Broadway Cab was undisputed. They choose their own hours and routes, own their own vehicles, buy their own licenses, carry their own health insurance, and are free to sell their own cabs. They keep all of their fares, and pay Broadway Cab a flat fee each month. Broadway Cab has an office, offers a dispatch service which the owner-drivers may use or ignore, and provides fleet liability coverage for all of the cabs. The owner-drivers elect the board of directors of Broadway Cab at the semiannual membership meetings.

In 1966 the Trustees of the Western Conference of Teamsters Pension Trust Fund determined, on advice of counsel, that the owner-drivers were common law employees and thus eligible to participate in the pension trust fund. During 1966–1979, Broadway Cab contributed to the trust fund on behalf of the owner-drivers and pursuant to a collective bargaining agreement with the local union representing them. The trust fund is an employee benefit trust established pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and a multiemployer pension plan as defined by § 3(2), (37)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2), (37)(A).

In January, 1979, the administrative manager of the trust fund wrote Broadway Cab recommending that the owner-drivers cease participating in the pension plan. The manager cited 1974 and 1975 cases in which taxicab owner-drivers were considered independent contractors. The February, 1979 collective bargaining agreement discontinued the owner-drivers' participation in the plan. Owner-drivers whose benefits had not vested requested a refund of their contributions. The trustees refused to refund the contributions, and then suspended payment of benefits to those owner-drivers whose entitlements had vested.

Two law suits were consolidated for trial: (1) the claims of the owner-drivers who are the appellants in this case (approximately 100), most of whom do not have vested pension rights, and who sought the refund of contributions made; and (2) the claims of a second subclass of four owner-drivers whose pensions had vested and who sought pension benefits. After a bench trial the district court denied appellants' claim for a refund of benefits paid, and held that the second subclass was entitled to benefits in accordance with the terms of the trust plan.

The district court denied the refund claim on the grounds that ERISA preempts any state law which might allow restitution, and that ERISA and the LMRA both prohibit the restitution of the pension fund contributions to the owner-drivers. These are interpretations of law subject to *de novo* review. *United States v. McConney*, 728 F.2d 1195 (9th Cir.), *cert. denied* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## II. PREEMPTION

ERISA preempts any state claim for the restitution of contributions made after January 1, 1975. 29 U.S.C. § 1144(a). *See Martin v. Hamil*, 608 F.2d 725, 729–30 (7th Cir.1979). The more difficult question is whether ERISA preempts state law governing the reimbursement of the contributions made from 1969 through 1974.

The broad preemptive provision of ERISA, 29 U.S.C. § 1144(a), does "not apply

with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." § 514(b) of ERISA, 29 U.S.C. § 1144(b). This cause of action "arose after January 1, 1975."[1] In determining whether the payment of contributions from 1969 to 1974 constitutes "an[y] act or omission ... [which] occurred before January 1, 1975" we look to the events "substantially related" to the cause of action. *Lafferty v. Solar Turbines International*, 666 F.2d 408, 410 (9th Cir. 1982).

In *Lafferty*, we rejected plaintiffs' argument that the payment of pre-1975 contributions constituted an act or omission occurring prior to January 1, 1975 for preemption purposes. We held that the only act "substantially related" to the breach of contract claim that a 1976 amendment to the plan unfairly discriminated between co-workers, was the 1976 amendment. 666 F.2d at 410.

■ Analogously we find that ERISA preempts state law here. The critical act which precipitated this action was the trust fund's 1979 decision that the owner-drivers' participation in the plan should be terminated. The discovery of the mistake,[2] our decision in *Sida of Hawaii, Inc. v. NLRB*, 512 F.2d 354 (9th Cir.1975)—which led to the discovery of the mistake—the owner-drivers' demand for a refund, and the trustees' refusal to refund the contributions are all post-January 1, 1975 acts which are substantially related to the cause of action.

The trustees' discovery of the error and their refusal to refund the contributions are not mere formalities—*Lafferty*, 666 F.2d at 410—or the "inexorable consequences" of pre-ERISA acts. *Quinn v. Country Club Soda Co.*, 639 F.2d 838, 841 (1st Cir.1981).

### III. FEDERAL JURISDICTION AND STANDING

Since ERISA preempts the state law claims, the jurisdictional question before us is whether the district court may consider the plaintiffs' claims under ERISA. The jurisdictional provision of ERISA, 29 U.S.C. § 1132(e)(1), provides:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C. § 1132(e)(1).

ERISA further empowers certain persons to bring certain types of civil actions. More specifically, section 1132(a)(3) provides:

A civil action may be brought—

. . . . .

1. The owner-drivers seek restitution on the grounds that contributions were mistakenly paid to the trust fund from 1966 through 1979. Although the parties assume Oregon law applies, the trust fund agreement provides that Washington law governs its "validity, construction and administration." We need not determine this conflict of laws question. Under either Oregon or Washington law the action accrues after January 1, 1975. In Oregon the action accrues upon discovery of the mistake. Or.Rev.Stat. § 12.040(4). *See Washington ex rel. Pierce County v. King County*, 29 Wash.2d 37, 185 P.2d 134 (1947) (action for reformation of a deed on the basis of mistake accrues when adverse claim is made against party seeking reformation). There is no evidence that the owner-drivers discovered the alleged mistake

prior to the January, 1979 letter from the trust fund.

2. The fact that the mistake was not discovered until after January 1, 1975 is not in itself determinative. To hold that ERISA preempts state law because the discovery of the mistake was a significant post-ERISA act would render the "act or omission" phrase meaningless since this action *accrues* upon discovery of the mistake. *See* 29 U.S.C. § 1144(b); *Quinn v. Country Club Soda Co.*, 639 F.2d 838, 840–41 (1st Cir.1981); *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307, 313 (8th Cir.1979) ("Act or omission" refers to events which give rise to but fall short of establishing a cause of action). *See also Reuther v. Trustees of Trucking Employees Welfare Fund*, 575 F.2d 1074, 1078 (3d Cir.1978).

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3).

In a decision subsequent to the district court's decision in this case, the Tenth Circuit held that the district court had jurisdiction to consider claims similar to the owner-drivers' in this case because the plaintiffs were trust "participants." *Peckham v. Board of Trustees,* 724 F.2d 100 (10th Cir. 1983). Participants are defined under the statute as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

The contributions which the owner-drivers seek to recover in this case were similarly made while they were thought to be "participants." This suit is one for equitable relief to redress what is now seen to have been a violation of the plan.

■ Although the parties argued the *Peckham* decision on appeal, the district court did not have an opportunity to consider it. The result in *Peckham* is sound. There may, however, be considerations not fully apparent in this record which could lead the district court to a different result. We therefore remand for the district court to consider in the first instance whether these plaintiffs are entitled to pursue their claims as "participants."

In suggesting that the district court examine whether the plaintiffs can be considered "participants," we do not ignore our holding in *Fentron Indus. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982). In *Fentron,* we held that ERISA authorized an employer to sue to recover contributions it had made to its employee pension fund. Although "employers" are not one of the four classes of persons specifically authorized by the statute to enforce ERISA, *see* 29 U.S.C. § 1132, we held that section 1132 was not meant to be an exhaustive list of the persons eligible to sue, and that "[i]n view of the intent of Congress to protect employer-employee relations ... the statute does not prohibit employers from suing to enforce its provisions." 674 F.2d at 1305.

*Fentron* in no way suggests, however, that the owner-drivers here should be considered "employers," eligible as such to sue under ERISA. While the plaintiff in *Fentron* was a single undivided corporate entity, the appellants here are approximately one hundred owner-drivers, who comprise only a part of the larger Broadway Cab corporate entity. Broadway Cab itself, in short, has not brought a suit to compel refund of its contribution; approximately one hundred individuals, who both own and drive their taxicabs, are the appellants. It may therefore be more accurate to characterize each individual appellant as a "participant," eligible to sue under *Peckham,* than as an "employer," eligible under *Fentron.*

■ In remanding to the district court to consider whether the appellants should be considered "participants," we reject the trust fund's threshold argument that the LMRA and ERISA prohibit the restitution of contributions. While the LMRA prohibits pension plan participants from receiving pension *benefits* on the basis of contributions made in violation of section 302 [3]—*see*

---

**3.** Broadway Cab and the trustees violated section 302 of the LMRA if contributions were made and accepted on behalf of independent contractors (the owner-drivers). *Todd v. Benal Concrete Construction Co.,* 710 F.2d 581, 583

(9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Section 302(c)(5) of the LMRA prohibits all payments by an employer to an employee representative (such as the trustee of a union trust fund) unless

*Aitken v. IP & GCU–Employer Retirement Fund,* 604 F.2d 1261, 1266–67 (9th Cir.1979); *Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106, 1108 (9th Cir.1976); *Moglia v. Geoghegan,* 403 F.2d 110, 116 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969)—it does not prevent them from seeking the recovery of contributions made. *Thurber,* 542 F.2d at 1109 n. 4, 5; *Moglia,* 403 F.2d at 116 n. 3.

■ Nothing in ERISA prohibits the restitution of contributions to the owner-drivers. Section 404(a) of ERISA—which provides that a trustee must discharge its duties "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D)—does not prevent restitution because nothing in the trust fund's documents and instruments do. The pension trust fund agreement in fact provides for the separation of and thus potential refund of contributions which are subsequently discovered to be unacceptable for any reason.

## IV. SECTION 403 OF ERISA

The owner-drivers argue that a refund is expressly contemplated under section 403 of ERISA, as amended by the Multiemployer Pension Plan Amendment Act of 1980, 29 U.S.C. § 1103(c)(2)(A)(ii). Under section 1103(c)(2)(A)(ii) contributions made by an employer to a multiemployer plan under a mistake of law may be returned to the employer within six months after the plan administrator determines that the contribution was made by mistake.[4]

■ The section does not by its terms authorize employers to sue, and the owner-drivers themselves are not the "employer" which paid the contributions. Broadway

Cab was. Nevertheless, a substantial body of law has now developed on this provision, and we are satisfied that the general equitable principles applied to claims by employers should apply to the claims of these plaintiffs. We are also satisfied that the requirements of section 1103(c)(2)(A) should apply to this action. Application of the requirements of section 1103(c)(2)(A) to the owner-drivers is necessary to protect the actuarial soundness of the plan. *See Smith v. CMTA–IAM Pension Trust, 654 F.2d 650, 657 n. 7 (9th Cir.1981).*

Every court except one which has considered this provision has held that the party seeking relief had a right to restitution when the equities favor it. *See Peckham,* 719 F.2d 1063 (abuse of trustees' discretion to deny a refund when there was no evidence that restitution would underfund the pension fund), *modified and reaff'd,* 724 F.2d 100 (10th Cir.1983); *Teamsters Local 639-Employees Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865, 868 (4th Cir.1981) (district court should determine whether employer is entitled to a refund on the basis of equitable principles); *E.M. Trucks, Inc. v. Central States Southeast and Southwest Areas Pension Plan,* 517 F.Supp. 1122 (D.Minn.1981) (employer should be refunded mistaken contributions if equity requires it). *See also Central States v. Wholesale Produce Supply Co.,* 478 F.Supp. 884 (D.Minn.), *aff'd,* 611 F.2d 694 (8th Cir.1979), and *Service Employees International Union v. Baucom Janitorial Service Inc.,* 504 F.Supp. 197 (D.D.C. 1980), where the courts, without considering the permissive language of section 1103(c)(2)(A), approved an employer's offset of overpaid contributions. *But see Crown Cork and Seal Co. v. Teamsters Pension Fund of Philadelphia,* 549

they are made to a trust fund for the exclusive benefit of employees. 29 U.S.C. § 186(c)(5). An independent contractor is excluded from the definition of an "employee." 29 U.S.C. §§ 142(3), 152(3).

**4.** Twenty-nine U.S.C. § 1103(c)(2)(A)(ii) is an exception to the general rule that "the assets of a plan shall never inure to the benefit of any

employer." Section 1103(c)(2)(A)(ii) provides in relevant part:

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

F.Supp. 307, 312 (E.D.Pa.1982) *aff'd mem.*, 720 F.2d 661 (3d Cir.1983) (language of section 1103(c)(2)(A) is permissive and employer has no right to restitution because such a right could "severely undermine the funds' integrity").

Legitimate concerns about the stability of the trust fund can be resolved by only allowing restitution when the refund would not affect the fund's stability. Whether restitution. in this case would affect that, the district court must decide. However, as the following discussion shows, we conclude that the other requirements for a refund of contributions made after January 1, 1975 have been met.

The MPPAA greatly expanded the scope of section 403(c)(2) for multiemployer pension plans: it added mistake of law as a basis for a refund of contributions and eliminated the one year limitation for the return of contributions. There is no express limitation as to the number of mistaken contributions which can be refunded under 29 U.S.C. § 1103(c)(2)(A)(ii). It provides merely that the contributions must be returned within six months after the plan administrator determines that the contribution was made by mistake.

Although the legislative history of this provision is sparse, there is nothing to indicate that the elimination of the one year limitation was inadvertent, or that a literal interpretation of section 1103(c)(2)(A)(ii) would be outside the scope of the Act.[5] *See Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 872 (9th Cir.1981).

■ The amendment to section 1103(c)(2)(A) became effective on January 1, 1975. Pub.L. No. 96–364, § 410(c), 94 Stat. 1208, 1308 (1980). The owner-drivers seek restitution of contributions made both before and after this effective date. The refund of contributions made prior to January 1, 1975, however, is barred because section 1103(c)(2)(A) does not apply retroactively.

The provisions in ERISA were not intended to be applied retroactively: "the actuarial soundness of pre-ERISA plans depended on a gradual and carefully calculated transformation to meet ERISA's more rigid standards." *Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650, 657 n. 7 (9th Cir.1981). *See Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 721 n. 40, 98 S.Ct. 1370, 1382 n. 40, 55 L.Ed.2d 657 (1978).

Section 1103(c)(2)(A) became effective on January 1, 1975, and in the absence of any indication of legislative intent to the contrary, we find that it is applicable only to contributions made on or after January 1, 1975. *See Peckham*, 719 F.2d 1063 (affirmed district court's order requiring the return of all contributions made after January 1, 1975); *Reuther*, 575 F.2d at 1077 (former section 1103(c)(2)(A) applies only to contributions made after January 1, 1975).

### A. *Mistake of Law*

■ The LMRA requires that pension contributions be made on behalf of employees, and the definition of employee excludes independent contractors. 29 U.S.C. §§ 186(c)(5) & 152(3). Contributions made on the assumption that the owner-drivers are employees when in fact they are independent contractors are made under a mis-

---

5. The mistake of law provision was added because "the requirement that a contribution be made due to a mistake of fact in order to be returned to the employer [of a multiemployer plan] is too narrow." Joint Explanation of S. 1076: Multiemployer Pension Plan Amendments Act of 1980, 126 Cong.Rec. S. 10130 (July 29, 1980).

The provision which allows contributions to be returned within six months of the date the plan administrator determines there was a mistake originated in S. 209, 96th Cong., 1st Sess. 125 Cong.Rec. 927 (1979). *See* 126 Cong.Rec. S. 10101 (daily ed. July 29, 1980) (statement of Sen. Williams). There is no explanation for the elimination of the one year limitation and the substitution of the six months provision. This liberalization of the statutory provision for the refund of contributions, however, might encourage more employer and employee pension plan participation, and thus is certainly not inconsistent with the MPPAA's intent to foster plan continuation and growth. H.R.Rep. No. 869(I), 96th Cong. 2nd Sess. 4, *reprinted in* 1980 U.S. Code Cong. & Ad.News 2918, 2919.

take of law. *See Martin v. Hamil*, 608 F.2d 725, 729 (7th Cir.1979). A determination of whether there was a mistake of law in the payments of the 1966–1979 contributions thus depends upon the characterization of the owner-drivers as employees or independent contractors and an analysis of whether the law with respect to this characterization has changed.

Since our decision in *Sida of Hawaii*, 512 F.2d 354, owner-drivers are independent contractors. In *Sida*, we reversed the Board's finding that taxicab owner-drivers are employees and held that they are independent contractors. In so doing we considered (1) that the drivers made substantial personal investments in their taxicab activities; (2) that the drivers were substantially independent in their operations—they could determine their own hours and location and keep their own income records; and (3) that the driver's contract specified that the drivers are independent contractors. We rejected the Board's assertion that the taxicab company's rules for its drivers gave the company sufficient control to be considered an employer.

Although the owner-drivers here have not signed a contract specifying that they are independent contractors, they own their own cabs and are entirely independent in determining their working conditions. The only evidence of any limitations on their independence is that the corporation's by-laws give the directors the authority to make and enforce rules concerning the personal conduct of the drivers and owner-drivers, and the power to supervise the vehicles. In *Sida*, however, we noted that similar rules of conduct are for the mutual benefit of the company and its drivers, and we rejected the Board's contention that the rules evidence an employer-employee relationship. 512 F.2d at 358–59.

The trust fund claims that *Sida* marks a change in the law, and that it relied on earlier Board opinions under which the owner-drivers would have been considered employees. The reliance on earlier NLRB cases appears to be misplaced. There has been no change in the law.

The trust fund relied on *Mound City Yellow Cab*, 132 N.L.R.B. No. 36, 1961 NLRB Dec. ¶ 10,194, in support of its initial determination that the owner-drivers constitute employees. The Cab Company in *Mound City* had more control over the cab driving operation than Broadway Cab. In *Mound City* the company rules "prescribed the method of operation of the cabs, regulated time of starting, hours to be worked and days to be worked, rates, [and] where the cabs would go and when." *Id.* *Mound City* is consistent with our decision in *Sida*.

The trust fund's reliance on *Checker Cab Co.*, 141 N.L.R.B. 64, 52 LRRM 1357 (1963) is also misplaced, because in *Checker Cab* the Board held merely that taxicab drivers who leased their cabs from individual taxicab owners were employees. In so holding the Board found that the leases are for a month, terminable immediately for cause, and that the lease drivers were subject to 39 rules involving both personal conduct and general cab operation.

The decision in *Yellow Cab Co.*, 208 N.L.R.B. No. 121, 85 L.R.R.M. 1273 (1974) is not inconsistent with the earlier cases. In *Yellow Cab*, taxicab owner-drivers who leased their taxicab permits from the cab company were determined to be independent contractors. The Board noted that other than a rule that the driver must report to the main office on notice of an emergency dispatch code, and the requirement that drivers be registered with the company, the company had no control over working conditions. Like the owner-drivers in this case, the owner-drivers in *Yellow Cab* were free to determine their own hours, their own areas, and to use their cabs for personal travel.

The legal principles applied to determine whether an individual is an employee or an independent contractor did not change from 1966 to 1979.[6] Nor has there been a

---

6. *See Mound City, supra* 132 (test is whether the employer has "the right to control the manner and means by which the result is to be accomplished"); *N.L.R.B. v. United Insurance Co. of*

change in the Ninth Circuit decisions regarding whether an individual constitutes an employee or an independent contractor.[7] In *Sida* we did not mention any change in law or policy and cited previous Ninth Circuit cases to support our decision.

The sole evidence in the record that the owner-drivers were employees is the fact that the corporation's bylaws authorized the company to make rules of conduct and to supervise the vehicles. There was no discernible change in the legal principles used to distinguish employees from independent contractors, nor in the Ninth Circuit's application of these principles between 1966 and 1979. All of the payments made during this period were made under a mistake of law.

### B. Determination of a Mistake By the Plan Administrator

■ The trust fund also argues that there can be no refund because the plan administrator never admitted that a mistake had been made. Section 1103(c)(2)(A)(ii) permits the return of contributions within six months after the plan administrator determines that the contributions were made by mistake.

In the letter of January 29, 1979 the administrative manager noted the "dramatic" change in the case law (citing cases from 1974 and 1975), and recommended that the owner-drivers cease participating in the plan. He nonetheless stated that the trust "is prepared to treat all participation of owner-drivers prior to the expiration of the current collective bargaining agreement [February 1, 1979] as valid." We reject the argument that a trust fund can, by denying that mistake has been made, escape its responsibilities under ERISA and the LMRA. Contributions to the trust fund can only be made on behalf of *employees—see* 29 U.S.C. § 186(c)(5). The administrator's citation of 1974 and 1975 cases under which the owner-drivers would be considered independent contractors, and its recommendation that owner-drivers should cease participating in the plan are sufficient to constitute a determination of mistake. If trust administrators' determinations of no mistake were always accepted, there would never be restitution under section 1103(c)(2)(A). *See Ethridge v. Masonry Contractors, Inc.*, 536 F.Supp. 365, 368 (N.D.Ga.1982).

### C. Timeliness

■ The owner-drivers claim is timely. Section 1103(c)(2)(A)(ii) provides that in the case of contributions received by a collectively bargained plan maintained by more than one employer, any determination of mistake by a plan administrator shall be deemed to have been made on September 26, 1980. Pub.L. No. 96–364 § 410(c), 94 Stat. 1208, 1308 (1980). Contributions may be returned within six months after the plan administrator determines that a mistake has been made. 29 U.S.C. § 1103(c)(2)(A)(ii).

While this is not an action under that section, the limitations period of that section is instructive as to the timeliness of this suit. The owner-drivers filed this law-

---

*America*, 390 U.S. 254, 256, 88 S.Ct. 988, 989, 19 L.Ed.2d 1083 (1968) (common-law agency principles should be used to distinguish an employee from an independent contractor); *Sida of Hawaii, supra* 512 F.2d at 357 (test is based upon "the amount of supervision that the putative employer has a right to exercise over the individual, particularly regarding the details of the work").

7. *See Brown v. NLRB*, 462 F.2d 699 (9th Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 441, 34 L.Ed.2d 301 (1972) (newspaper dealers who control their own distribution and who bear almost all of the risk of loss are independent contractors); *Carnation Co. v. NLRB*, 429 F.2d 1130 (9th Cir.1970) (dairy route salesmen, granted an exclusive right to sell in a geographic area, who set their own hours of work, pay their own taxes and hire their own helpers are independent contractors); *Associated Independent Owner-Operators, Inc. v. NLRB*, 407 F.2d 1383 (9th Cir.1969) (owner-operators who are employed for specific grading and excavating jobs are independent contractors since there was no evidence that the supervisors had the right to control details of the work); *NLRB v. Servette, Inc.*, 313 F.2d 67 (9th Cir.1962) (driver-salesmen who are franchisees and depend upon their own initiative (and not wages) for income are independent contractors).

suit in August, 1980, one month before the Act was passed and became effective. The pendence of this suit constituted a timely request for a refund to which the trustees never appropriately responded. *See Peckham*, 719 F.2d at 1065–66.

## V. *Conclusion*

■ The final question is if the plaintiffs may pursue a cause of action under ERISA for restitution, whether the equities favor restitution. The trustees' reliance on counsel's determination that the owner-drivers were eligible to participate in the plan weighs against restitution. On the other hand, the owner-drivers will accrue no benefits under the plan, and in the absence of a remedy, their contributions would be forfeited.[8] The critical question is whether refunding the owner-drivers' contributions would undermine the financial stability of the plan. *See, e.g., Peckham*, 719 F.2d at 1066. The trustees introduced evidence on the effect of restitution on the actuarial soundness of the plan. Because of the owner-drivers' confused presentation of their case, however, the court did not make any findings on the issue.

We REVERSE and REMAND to the district court to determine whether plaintiffs, like the plaintiffs in *Peckham*, may pursue this action under ERISA, and if so, whether the equities favor restitution. If the court rules in favor of the owner-drivers it must determine the amount to which they are entitled for the contributions paid from 1975 through 1979.

**8.** The trust fund argues that the owner-drivers could accrue benefits under the plan by reorganizing Broadway Cab so that they had indicia of employees or by becoming employees of some other employer who contributes to the plan. The LMRA, however, prohibits pension plan participants from receiving pension benefits on the basis of contributions made in violation of section 302 (29 U.S.C. § 186)—*see Aitken, supra,* 604 F.2d at 1266–67; *Thurber, supra,* 542 F.2d at 1108; *Moglia, supra,* 403 F.2d at 116. *See supra* note 3.

**1.** The conclusion that it is ordinarily the employer who has the right to sue for a refund is

REINHARDT, Circuit Judge, concurring.

I concur in the result. The statute provides that when payments are made to a trust fund by mistake they may be refunded to the employer making the payment. Accordingly, we have held that when payments have been made by mistake, the employer may sue for a refund. *See Fentron Industries v. National Shopmen Pension Fund*, 674 F.2d 1300, 1305 (9th Cir.1982). *But cf. Crown Cork and Seal Co. v. Teamsters Pension Fund*, 549 F.Supp. 307 (E.D.Pa.1982), *aff'd mem.*, 720 F.2d 661 (3d Cir.1983). However, I do not believe that the statute contemplates that individual employees shall ordinarily have the right to institute suit for such refunds, even though they are "participants" in a trust fund. Under the statute (and whatever the ultimate entitlement to the monies) it is the employer who made the payments who is entitled to the return of the contributions it has paid.[1]

Here, the payments were made by a corporation that is not an employer. Nevertheless, I believe that the corporation, Broadway Cab Cooperative, Inc., would have been entitled to request a refund or to institute suit for the return of the amounts it paid under a mistake of law. The corporation executed the collective bargaining agreement providing for the payment of the contributions. It was responsible for making payments under that agreement, and it actually made the payments. The problem in this case arises from the fact that the corporation was a membership or-

consistent with the conclusion reached by the Tenth Circuit in *Peckham v. Board of Trustees*, 719 F.2d 1063, *modified and reaffirmed*, 724 F.2d 100 (10th Cir.1983). The "participants" in *Peckham* were employers; they were sole proprietors who had made contributions on behalf of themselves and their employees. Like the sole proprietors in *Peckham*, the owner-drivers in this case are not employees. But, in contrast to the *Peckham* plaintiffs, the plaintiffs here are not employers; nor did they enter into a written agreement for the making of contributions or make the payments to the trust fund directly.

ganization and its members were divided over whether to seek a refund. As a result, the corporation did nothing. Instead, the suit for a refund was filed by a class representing some, but not all, of its members.

I agree with the majority that in the case of a membership organization with no employees, the members of the organization may institute a suit for the refund of contributions if they do so as a class. There is no difference between the organization and its members as a whole. I have serious doubts, however, whether, when the membership is divided, a suit may be maintained by a class representing only a portion of the membership—a group that seeks the return of only a part of the allegedly erroneous payments.[2] Perhaps, under some circumstances, such a suit would be permissible. Under others, undoubtedly, it would not. Where contributions are either lawful or unlawful, the return of the entire payment should ordinarily be sought.

Unfortunately, the parties did not address the question of the appropriateness of a class of less than all the "participants".[3] I think that before resolving the issues mentioned in the majority opinion, the district court should consider that question fully.

**2.** The plaintiffs in *Peckham, supra,* sued for a refund of all the contributions they made under a mistake of law.

**3.** In fact, nowhere in their briefs before us did appellants even contend that they were entitled to sue as "participants." Moreover, the district court received little help from the litigants on the pertinent issues. Because of the manner in which the parties presented their arguments throughout this litigation, I agree with my colleagues that the case should be remanded to the district court for a full exploration of the legal issues relating to refund suits by participants.